With this explanation the appellant's application for a rehearing is denied.

**186 So. 66**

**MIMS et al. v. SAMPLE et al.**

**No. 34966.**

Nov. 28, 1938.

Rehearing Denied Jan. 10, 1939.

Barksdale, Bullock, Warren, Clark & Van Hook, of Shreveport, for appellant Spencer Mims.

Lee & Lee, of Shreveport, for appellant S. G. Sample.

Malcolm W. Feist and Armand W. Roos, Jr., both of Shreveport, for appellee.

HIGGINS, Justice.

This is an action to annul a certain instrument designated as a "Declaration of Ownership," in which the respective

proportionate interests of the co-owners are set forth, on the ground of alleged error and misunderstanding, and for judgment recognizing the correct proportionate interests of the co-owners.

The defendants denied that an error had been made and that there had been a misunderstanding, and pleaded estoppel against the plaintiffs, who had signed the instrument, and interposed other pleas and defenses against Roxie Mims Lewis, one of the plaintiffs, who had not signed the document.

There was judgment sustaining the plea of estoppel against the plaintiff, Spencer Mims, and fixing his interest at $\frac{1}{7}$ of the 400 acre tract of land, subject to certain mineral sales; fixing the interest of the defendant S. G. Sample at $\frac{25}{63}$ of the property; recognizing Roxie Mims Lewis as the owner of an undivided $\frac{1}{7}$ interest in the land; and the other plaintiffs and defendants, whose interests were correctly stated in the document, in their proper proportions. Both the plaintiff, Spencer Mims, and the defendant, S. G. Sample, appealed.

The learned trial judge has favored us with a well reasoned opinion, and after a careful review of the case, we quote it in full, with our approval:

"Plaintiffs, Spencer Mims, Aria Mims Hogan, Annie V. Mims Jones, Ernestine Mims Smith, Fannie Mims, Henry Mims, Jordan Mims, Joe Mims, I. D. Mims and Roxie Mims Lewis allege that Spencer Mims is the son of Robert and Ruth Ann Mims, both of whom died intestate more than 35 years ago, and that the other plaintiffs except Roxie are grandchildren, and Roxie is the great-granddaughter, and sole heir of decedents' son Robert who died about 1927, Roxie having been born of Robert's predeceased son Isaac Mims.

"That the said Robert and Ruth Ann Mims left nine children surviving as their sole heirs, the others being Abe, Josephine, Matthew, Annie, Matilda and John, sometimes called 'June.' Annie, Josephine and Matthew died in the order named and without issue.

"That Robert and Ruth Ann Mims left an estate consisting of the following described land belonging to the marital community to wit:

"SE-$\frac{1}{4}$ of SE-$\frac{1}{4}$ Sec. 29; E-$\frac{1}{2}$ of NE-$\frac{1}{4}$ Sec. 32 and W-$\frac{1}{2}$ of NW-$\frac{1}{4}$ Sec. 33, Tp. 17 N. Range 11 W., acquired by purchase from E. F. Connell by deed dated July 31, 1876, recorded in Vol. 10 page 302, and

"W-$\frac{1}{2}$ of SE-$\frac{1}{4}$ Sec. 31, Tp. 17 N. Range 11 W., acquired by deed dated Jany. 2, 1883 recorded in Vol. 12 page 295, from E. R. & T. J. Moore, and

"NE-$\frac{1}{4}$ of SW-$\frac{1}{4}$ and E-$\frac{1}{2}$ of NW-$\frac{1}{4}$ Sec. 21, Tp. 17 N. Range 11 W. by deed dated Feby. 27, 1888, recorded Vol. 14 page 235, from V. S. & P. R. R. Co.

"That Matilda Mims sold the interest she inherited from her parents, 1/9, before the death of either Annie or Josephine, to Loye McDade and D. E. Alford, April 3, 1903, by deed recorded in Vol. 24, page 249, and after the death of the two sisters named she sold the interest inherited from them, 2/63 to Armand W. Roos by deed

dated March 14, 1916; that Abe and John Mims sold their interest inherited from their parents and their sisters, Annie and Josephine, 2/7 in all, to Loye McDade and D. E. Alford by deeds dated Jany. 6, 1909, recorded in Vol. 29, page 711 and March 15, 1916 recorded in Vol. 37, page 265 and Sept. 12, 1935, recorded in Vol. 121, page 5; that Matthew sold his undivided interest after the deaths of Annie and Josephine, 1/7 to Armand W. Roos, by deed March 13, 1916, recorded in Vol. 37, page 256; that Spencer Mims bought the interest of his brother, Robert, after the death of Annie and Josephine, 1/7, in all the land except E-½ of NW-¼ Sec. 21-17-11, by deed dated Nov. 23, 1925, recorded in Vol. 79, page 174; that McDade and Alford sold their interest, 25/63, erroneously described in the deed as 214/400, to S. G. Sample July 25, 1935, by deed recorded in Vol. 114, page 592, followed by a quit claim of all their right, title and interest from Alford and the widow and sole heir of McDade, April 15, 1936, recorded in Vol. 123, page 71; that Henry, I. D. and Joe Mims sold their undivided interests in E-½ of NW-¼ and NE-¼ of SW-¼ Sec. 21-17-11 to E. G. Cravath April 13, 1936 by deed recorded in Vol. 122, page 188.

"That Armand W. Roos died in 1931 leaving a widow, Valerie K. Roos, and three sons, Armand W. Jr., Henry K. and Floyd D. Roos, the latter of whom is a minor represented by his mother as natural tutrix, and judgment in his succession has been filed and recorded in Bossier Parish and a Notarial declaration dated May 19, 1937 recorded in Vol. 132, page 169, rec-

ognizes that Samuel Feist is the owner of 1/2 interest of the interest in the land acquired in the name of Amand W. Roos.

"That plaintiffs and vendees own the property in the following proportions:

"SE¼ of SE¼ Sec. 29; W-½ of SE¼ Sec. 31; E-½ of NE-¼ Sec. 32 and W-½ of NW¼ Sec. 33, T. 17 N.R. 11 W.

"Spencer Mims .................... 2/7
Aria, Annie V., Ernestine, Fannie, Henry, Jordan, Joe and I. D. Mims 1/7
Valerie K. Roos (1/2 of 11/126) and Armand W. Jr., Henry K. & Floyd D. Roos (each 1/6 of 11/126)......11/126
Samuel Feist .....................11/126
S. G. Sample....................25/63

"NE-¼ of SW¼ Sec. 21–17–11

"Spencer Mims .................... 2/7
Aria, Annie V., Ernestine, Fannie & Jordan Mims (1/56th each)..... 5/56
E. G. Cravath.................... 3/56
Valerie K. Roos and children......11/126
Samuel Feist .....................11/126
S. G. Sample....................25/63

"E½ of NW-¼ Sec. 21–17–11

"Spencer Mims .................... 1/7
Roxie Mims Lewis............... 1/7
Aria, Annie V., Ernestine, Fannie & Jordan Mims (1/56th each)..... 5/56
E. G. Cravath.................... 3/56
Valerie K. Roos and children......11/126
Samuel Feist .....................11/126
S. G. Sample ....................25/63

"That on October 21, 1935 some one, on behalf of S. G. Sample, filed for record, simultaneously with the filing of the deed from McDade & Alford to Sample, a writ-

ten instrument, dated Oct. 21, 1935, signed by Loye McDade, D. E. Alford, Mrs. Armand W. Roos, Succession of Armand W. Roos by David Roos, Samuel Feist, & Mrs. Amand W. Roos, testamentary executors, Mrs. Armand W. Roos, tutrix of Armand, Henry and Floyd Roos, and by all of plaintiffs except Ernestine and Aria and Roxie Lewis, purporting to declare the respective interests of the co-owners of all the land above described, which instrument is recorded in Vol. 121, page 118, and annexed for the purpose of rem ipsam, only.

"That said instrument erroneously sets out that Spencer Mims owned only an undivided 1/7 interest in the land and that McDade and Alford owned an undivided 34/126 interest each, and omits any mention of the interest owned by Roxie, and was signed by petitioners whose names appear thereon as having signed it, through error and misunderstanding as to its contents, import and object, and without consideration, for which reasons it is void and without effect.

"That said instrument was presented to plaintiffs except Roxie, and they were requested to sign it by one W. E. Hall, whose name appears thereon as a witness to the signatures of all who signed it, and plaintiffs aver on information and belief that it was prepared by and under direction of said Hall as agent of Sample and for the joint advantage of Sample and himself, in order to apparently vest in said Sample under the deed from McDade and Alford, a greater interest in the land than they owned and to divest Spencer Mims of an in-

terest he did own, without his consent and without consideration and he, Spencer, and the other plaintiffs who signed it were unaware of its meaning and effect and were deceived by the representations of Hall into the belief that he was trying to find out the portion of the estate that each of the heirs inherited; that petitioners are colored people, with scant education and little knowledge of the meaning of legal documents.

"They aver on information and belief that Hall, at the time he procured the signing of the instrument, had an undisclosed interest with the said Sample in the purchase from McDade and Alford.

"Aria and Ernestine say that they refused to sign the instrument when it was presented to them because they discovered it did not truly recite the interest owned by their uncle, Spencer, nor mention the interest of Roxie, their cousin.

"That in any event, whether the instrument is avoided for error or not, it purports on its face to be a compromise as to the respective interests of all the parties, and not being signed by all of the parties it is void and without effect.

"That Spencer Mims renounced and repudiated the instrument as soon as he discovered the error therein, by affidavit dated Jany. 21, 1937, recorded in the records of Bossier Parish the same day.

"They pray for judgment annulling the instrument complained of, and recognizing the parties as owners of the land in the proportions set out in the petition, and in the alternative, if it is held that Spencer

Mims did not acquire, or has renounced or is estopped to claim title from Robert Mims under the deed dated Nov. 25, 1925, recorded in Vol. 79, page 174, that Roxie Mims Lewis, as the sole heir of Robert Mims deceased, be recognized as the owner of an undivided 1/7 interest in the land, and for general relief.

"The Rooses and Samuel Feist answered the petition admitting that the interest they claim in the land is correctly set forth in the petition and that they have no contest with plaintiffs. They pray for their interest to be fixed in the judgment as set forth in the petition.

"The same counsel appeared for E. G. Cravath and S. G. Sample, but there does not appear to be any dispute as to the interest of E. G. Cravath. In a supplemental answer she says she acquired from Spencer Mims 1/7 interest in the minerals on NE-¼ of SW-¼ and E-½ of NW-¼ Sec. 21-17-11 by deed dated Nov. 16, 1936, recorded in Vol. 119, page 570 and 1/14 interest in the minerals on the other land described in the petition, by deed dated Dec. 28, 1936, recorded in Vol. 128, page ———, and that the fee title of Spencer Mims is subject to her mineral ownership, and she prays for recognition of this in the judgment to be rendered.

"Sample in his answer says that Spencer Mims had stated that the deed from Robert Mims to him was to secure payment of a sum of money and not intended to convey the 1/7 interest of Robert in the land, and he pleads this and the declaration annexed to the petition as estoppel against Spencer. The interest set out in the petition of the interest of all the plaintiffs except Spencer and Roxie is admitted. It is admitted that W. E. Hall has an undisclosed interest with Sample, and that Aria and Ernestine refused to sign the declaration of interest, but not their reason for refusing to sign.

"Sample says that when the deed from McDade and Alford to him was executed it was placed in escrow with his check, subject to approval of title, and that the title was accepted only after the instrument complained of was signed, and he pleads estoppel against all those signing it. He says that in addition to the interest McDade and Alford acquired as set out in plaintiffs' petition, they also obtained a deed from Isaac Mims, father of Roxie and son of Robert, for 1/7 interest in the land on March 15, 1916, and that they took actual possession of this interest and the other interests they bought, at the time of purchase, and pleads the prescription of ten years in bar of the claims made against him; that Roxie is the sole heir of Isaac Mims, and claims her interest by representation through him, and that Isaac having executed a warranty deed to the property, she, as his sole heir, is estopped to claim this interest, and that the interest of McDade and Alford was 34/63 just as set out in the declaration of ownership; that in the deed from Isaac Mims to McDade and Alford dated March 15, 1916, the E-½ of NW-¼ Sec. 21-17-11 through error was described as E-½ of NE-¼, and having acquired from McDade and Alford, he says he is entitled to have the deed reformed.

"Sample, pleading in the alternative, says that Roxie, as the sole heir of Isaac Mims, is bound in warranty by the deed from her father (referred to above), and is estopped to claim an interest in the property. Further, in the alternative, if she is not bound by the warranty of her father, that in suit No. 9462 on the docket of Bossier Parish, styled Robert Mims v. Loye McDade and D. E. Alford, the said Robert Mims, grandfather of Roxie, filed a petitory action praying to be decreed the owner of 1/7 interest in the land, except E-½ of NW-¼ Sec. 21-17-11, which in the petition was described as E-½ of NE-¼, alleging in the petition that he inherited same from his father and mother and his sister Josephine, and that an exception of no cause and no right of action was sustained by judgment rendered in April, 1925, and no appeal taken therefrom, and is now res judicata.

"On the day of the trial of the case Roxie Mims Lewis filed a renunciation of the succession of her father, Isaac Mims, and a plea of prescription of ten years in bar of the reconventional demand of Sample to have the deed from Isaac Mims to McDade and Alford reformed.

"Counsel for Sample admit that on the authority of Louisiana Oil Refining Corp. v. Gandy, 168 La. 37, 121 So. 183, their reconventional demand for reformation of the deed is barred by the prescription of ten years pleaded, so that there can be no doubt that Roxie Mims Lewis should be decreed to be the owner of ⅐ interest in E-½ of NW-¼ Sec. 21-17-11.

"This leaves in dispute the 1/7 interest in the balance of the land that fell to Robert Mims by inheritance from his father and mother and his two deceased sisters. Robert Mims was married and had one son, Isaac Mims, the father of Roxie Mims Lewis. Robert got into some trouble and left the country for a good many years, later returning. While he was away Isaac executed a deed to McDade and Alford undertaking to sell, apparently, the 1/7 interest that Robert, his father, owned in the land, presumably on the theory that Robert was dead, but Robert came back and instituted a petitory action against McDade and Alford to recover this interest. The suit was met with an exception of no cause and no right of action, which was sustained. Mr. A. M. Wallace was attorney for McDade and Alford in that suit and he says the suit was dismissed for failure to allege the chain of title required in a petitory action. Defendants pleaded this judgment in their answer as res judicata against Robert Mims and those claiming under him, but have not discussed this phase of the defense in their brief, so I take it that this defense is abandoned.

"As to the plea of estoppel tendered against Spencer Mims, I am of the opinion that it is good to the extent that he cannot now claim to own more than 1/7 interest in the land. Whether or not he can establish title in McDade and Alford and their vendee, Sample, to an extra 1/7 interest in the property is another matter. The only paper title McDade and Alford ever had to this interest is the deed from Isaac Mims to them dated March 15, 1916, while Robert Mims, his father, was still living, and he

therefore had no title to convey. Robert outlived Isaac, so that Isaac never inherited anything from his father. In 1925 Robert executed a deed to Spencer Mims for his interest in the land, misdescribing E-½ of NW-¼ Sec. 21 as E-½ of NE-¼. Defendants say that this deed was a mortgage in disguise to secure the repayment of money he owed Spencer, and sought to prove it on the trial of the case and if this is so, their position, in my opinion, is no better, because as I view the case, the fact that Spencer is estopped to claim more than 1/7 interest cannot make them a title to the other 1/7 interest. Their title to this 1/7 interest will have to rest on some other defense. They pleaded the prescription of ten years acquirendi causa to the 1/7 interest Isaac sold them, but offered no proof of possession, and have not discussed this plea in their brief, and even if they could plead this prescription as to an undivided interest, this defense falls for lack of proof.

■ "Defendants contend that as Roxie is the sole heir of Isaac Mims and claims an interest in the property by representation through him, and her father having warranted the title she is estopped to claim this interest. If Robert Mims had died before Isaac did, and without selling his interest, then Isaac would have inherited from Robert and under the deed he had made the title would have been good in McDade and Alford, but Isaac died first, so that he never inherited anything from his father. Roxie is not claiming anything from the estate of her father. She, as a child of Isaac, represents him, and inherited any interest she may have in the property from her grandfather, and when defendants undertook to charge her with the warranty of her father she formally renounced his succession.

"Roxie was a minor when her father died. She is only 22 years old now. It is not shown by this record that he left any estate whatever. His father, Robert, was then living, so that he had inherited nothing from him. If there was any acceptance of his succession by Roxie it would of necessity have been with benefit of inventory, because as a minor, she could not accept in any other way. This is too well settled to require citation of authority. It is true that she might have waived the benefit if she had sued to recover property that once belonged to her father, but she is not here claiming any property that her father ever owned or in which he ever had any interest.

■ "It is of course now well settled that where the heir accepts the succession of the ancestor unconditionally he is bound for all the obligations of the succession and the ancestor, including that of warranty. See Berry v. Wagner, 151 La. 456, 91 So. 837, where the cases on the subject are cited and discussed. To the same effect is Griffing v. Taft, 151 La. 442, 91 So. 832. This has been followed in Whittington v. Heirs of Pegues, 165 La. 151, 115 So. 441 and Foster v. Spann, 170 La. 1019, 129 So. 622 and other cases in both the Supreme Court and the Courts of Appeal. In Berry v. Wagner, supra, at page 475, 91 So. at page 844, it is said:

" 'In the case of Chevalley v. Pettit, 115 La. 407, 39 So. 113, on rehearing, this court expressed the opinion that heirs who had inherited the estate of their deceased uncle,

not directly, as his nearest of kin, but by representation of their predeceased mother, a sister of the deceased uncle, were not bound by a warranty obligation of their deceased mother. The opinion was founded upon the fact that the heirs had not accepted the succession of their mother, had not inherited anything from her, but had inherited only the estate of their uncle, who was not under any warranty obligation. The decision, therefore, is not in conflict, but in accord with the decisions which we have cited.'

■ "It appears to me that Roxie is in the same situation here. It is not shown by the record that her father left any estate, though he did leave this warranty obligation. If she accepted his estate during minority it was with benefit of inventory, and when Sample undertook to charge her with the warranty of her father she promptly renounced, formally, his succession, and I do not believe that she is estopped to claim the 1/7 interest that her grandfather owned.

"For these reasons there will be judgment fixing the interests of the various parties in the land by reducing the interest of S. G. Sample to 25/63, and fixing the interest of Roxie Mims Lewis at 1/7 in all the land, and the interest of Spencer Mims at 1/7 in all the land, subject to the mineral sales to E. G. Cravath, and fixing the interests of all the other parties to this proceeding as their interests are set forth in the petition. Defendant Sample to pay the costs of this proceeding."

■ Counsel for the defendant Sample contends that Roxie Mims Lewis was es-topped to claim the 1/7 interest awarded to her by the district judge, because in Article 8 of the petition, which she signed, it was alleged that her grandfather, Robert Mims, from whom she inherited, had sold that same 1/7 interest to Spencer Mims, and the plaintiffs had offered the act of sale in evidence on the trial of the case. This argument ignores the fact that the defendant, in his answer, denied that there was such a sale and averred that, while the purported sale was in the form of an act of conveyance, it was, in fact and truth, a mortgage. It also fails to take into consideration the prayer of the supplemental petition of the plaintiffs, in which they ask, in the alternative, that should it be held that Spencer Mims "did not acquire, or has renounced, or is estopped to claim title from Robert Mims under the deed of November 23, 1925, recorded in Conveyance Book 79 at page 174," then "that petitioner, Roxie Mims, wife of Jesse Lewis, as sole heir of said Robert Mims, deceased, be recognized as the owner of an undivided one-seventh interest in the lands described in said deed. * * *"

■ Furthermore, the only one who had an interest in complaining on that score was Spencer Mims and he joined Roxie Mims Lewis, in the alternative prayer contained in the amended petition, and, consequently, waived his right to raise that issue against her. The defendant Sample was not put at any disadvantage by this conclusion of the district judge, because the judgment recognized Sample for the proportionate interest that his predecessors in title claimed in the "Declaration of Ownership". As pointed out by the trial judge, Sample

failed to establish any right to the 1/7 interest awarded to Roxie Mims Lewis.

 Supplementing the reasons of our learned brother below for sustaining the plea of estoppel as against Spencer Mims, it was shown that prior to the time of the execution of the document in question, he had signed a similar instrument in connection with an oil and gas lease, wherein he stated that his interest in the 400 acre tract of land was an undivided one-seventh. Defendant Sample and his vendors had nothing to do with that transaction. There was also testimony tending to show that he considered himself to be the owner of a one-seventh interest and that, at the time of the execution of the alleged erroneous document, his attention was called to the fact that his interest was declared to be one-seventh therein, and that the purpose of having each of the co-owners sign it was to clear the title so that the respective owners could dispose of their interests when they saw fit to do so. This, of course, was necessitated by the attorney refusing to approve the title until the complicated and uncertain condition of the title was clarified. There is no doubt that Sample relied on this recorded document in purchasing his interest in the land.

Counsel for Spencer Mims raise two additional points in this Court: First, that the document was unenforceable for lack of a valid consideration and, second, that the instrument was an act of partition and as some of the co-owners refused to sign it, the whole transaction failed of accomplishment.

The defendant Sample, having paid the sum of $6,800 on the strength of the representations set forth in the "Declaration of Ownership", it is clear that insofar as he was concerned, there was a valid consideration. (2) The document is not an act of partition but merely an agreement between the co-owners of what their respective proportionate interests amounted to and was signed for the purpose of clarifying a doubtful condition of the title, due to the fact that it was not clear in what proportions the parties owned the land.

For the reasons assigned, the judgment appealed from is affirmed, the appellants to equally bear the costs of this court.