GLADNEY, Judge.
Union Producing Company instituted this concursus proceeding on April 29, 1958, to have judicially determined the ownership of a Vio mineral interest in the South Half of Southwest Quarter of Section 20, Township 17 North, Range 11 West, Bossier Parish, Louisiana, and a %o of y% royalty interest in the production from the unit gas well for said Southwest Quarter of Section 20. Union, the lessee and operator, deposited in the registry of the lower court the royalty accrued to said %o mineral interest at the time of the filing of this suit, and has continued to deposit additional royalty as it has accrued to said interest. Joined by Union as parties having or claiming an interest thereto were Melvin F. Johnson, F. R. Schneider, W. G. Ray, B. M. Nowery, and the nine heirs of Ed Lemons.
The 80 acre tract, comprising the S of SW °f Section 20 involved herein, was acquired by Henry Lemons and Pennie Pope Lemons prior to 1880 through a patent from the United States Government. Henry Lemons died about 1882 and Pennie Lemons died in 1908. They were survived by the following five children as issue of their marriage: Henry W., Burton, Mary *135 Jane, Ed and Charity. In addition, Pennie Lemons left a child, Jim Sinney, who was apparently horn to her prior to her marriage to Henry Lemons. Charity Lemons died intestate in 1928 leaving no descendants. Mary Jane Lemons married Will Barber and died intestate leaving one child, James Barber. Ed Lemons died intestate in 1916 and left nine children. The succession of Henry and Pennie Lemons was not opened until May of 1937, when an ex parte judgment was obtained on behalf of Jim Sinney decreeing ownership of the 80 acres in the following proportions: Henry W. Lemons, Burton Lemons, and James Barber as owners of an undivided ^oths interest each; the nine heirs of Ed Lemons as owners of an undivided %oths interest each; and Jim Sinney as owner of an %oths undivided interest. Also in may of 1937 an instrument of compromise, quoted hereinafter, was prepared by Jim Sinney’s attorney wherein the parties’ ownership of the tract in the above proportions was purportedly conveyed and recognized. The instrument was not executed by the nine Ed Lemons heirs, however.
In 1935 and 1936, being prior to the succession judgment and compromise agreement, Burton Lemons, Henry W. Lemons, and James Barber executed mineral sales totaling % of the minerals under the 80 acre tract to various parties. A summary of said mineral sales is as follows:
(1) By deed dated July 19, 1935, Burton Lemons, H. W. Lemons, and James Barber sold one-half of the minerals under the 80 acres to H. C. Miller.
(a)Miller subsequently sold one-fortieth of the minerals under the tract to J. S. Slack, Trustee, and three-eightieths of the minerals under said tract to C. B. Stroud, Trustee.
(2) By separate deeds dated January 11, 1936, Henry Lemons and Burton Lemons each conveyed one-sixteenth of the minerals (total one-eighth) to P. L. McDade.
(a) McDade subsequently sold said one-eighth of the minerals to F. R. Schneider.
(b) Schneider then sold one-sixty-fourth of the minerals to Val Irion who in turn conveyed said %i mineral interest to A. C. Glassell, Jr.
(c) Mr. Schneider has died and Mrs. Lucille Talley Schneider, Mrs. Marian Schneider Baldwin, Charles Raymond Schneider and Stephen W. Schneider have been substituted for him as parties defendant herein.
(3)By deed dated October 13, 1936, Henry W. Lemons, Burton Lemons, and James Barber conveyed unto W. G. Ray one-eighth of the minerals under the entire tract;
(a) Ray subsequently conveyed one-sixteenth of the minerals to B. M. Nowery;
(b) Nowery subsequently conveyed one-thirty-second of the minerals to J. F. Van Cleve ;
(c) Mr. Ray has died and Mrs. Lucie Leveque Ray and Mrs. Thais E.' Ray Soes have been substituted for him as parties defendant herein;
(d) Mr. Nowery has died and James Richard Nowery, John Edward Now-ery, and Byron Milton Nowery, Jr., have been substituted for him as parties defendant herein.
On May 18, 1937, Jim Sinney conveyed a %o fee interest, being 1/2 of the Yio interest allocated to him in the compromise agreement and succession judgment, to his attorney, Melvin Johnson. His remaining interest was conveyed to William H. Brown on March 3, 1938, and it too was subsequently acquired by Johnson from Brown on February 2, 1953. The purported fee conveyances from Sinney admittedly were subject to the outstanding mineral sales which had been executed in 1935 and 1936, as noted above. Although there were no drilling operations conducted *136 on the subject premises until 1949, oil and gas leases dated August 1, 1944, which were jointly executed by the various mineral owners as well as Henry W. Lemons, Burton Lemons, and James Barber, and which were ratified by Johnson and Brown in 1953, purported to effect an acknowledgment of, and an interruption of the running of prescription against such mineral servitudes.
Johnson answered the concursus petition by asserting ownership of an undivided Yio fee interest in the 80 acre tract predicated upon the succession judgment and compromise agreement in favor of Sinney and the several deeds by which he, Johnson, acquired Sinney’s interest. Johnson further averred that the various mineral servitudes created in 1935 and 1936 had prescribed inasmuch as no operations were conducted on the premises until 1949, and that he was therefore entitled to be recognized as owner of a V20 interest in Ys oí all mineral production from the unit well. The other joined claimants, the Ed Lemons heirs and the mineral owners, Schneider, Ray and Nowery, answered and denied the validity of both the succession judgment and the compromise agreement. Johnson filed pleas of acquisitive and liberative prescription. He also interposed an exception of no cause or right of action predicated on the contention that the concursus was improperly provoked.
After trial on the merits, the lower court rendered judgment rejecting Johnson’s claims to a share of the fund deposited, and in written reasons assigned thereto, concluded: that Jim Sinney was an illegitimate child and not an heir; that, consequently, the ex parte succession judgment was an absolute nullity; that the evidence failed to establish the possession and good faith requisite to acquisitive prescription; and that the plea of liberative prescription was likewise unsupported by evidence.
While the case was pending upon application for rehearing or new trial, Johnson filed a motion of nonjoinder of parties and a plea of prescription of ten years, LSA-C.C. Art. 2221, against any attack or claim of nullity against the compromise agreement. The motion of nonjoinder was dismissed as not timely filed in limine, and the plea of prescription and motion for rehearing were likewise overruled.
On appeal to this court Johnson contends the lower court erred in: not sustaining the exception of no cause or right of action for concursus; not concluding that Johnson owned by regular transfer from Henry W. Lemons, Burton Lemons, and James Barber, an undivided V10 interest in the 80 acre tract; and in not holding that the mineral servitudes created in 1935 and 1936, under which Ray, Nowery, and Schneider were claiming, expired by ten year nonuser, and that all of said minerals reverted to the landowners, one of which was Johnson.
The exception of no cause or right of action is predicated upon allegations that this concursus proceeding will not lead to a judgment disposing of all issues between the parties inasmuch as all parties having an interest or claim to the money deposited were not joined. In this regard, Johnson contends that instead of joining the Ed Lemons heirs, against whom Johnson had no claim, Union should have joined Henry W. Lemons, Burton Lemons, and James Barber as well as all of the parties who claimed mineral holdings through them. The contentions thus made are, in our opinion, adequately refuted by the briefs submitted to this court on behalf of Union Producing Company wherein it is shown: that regardless of the validity or invalidity of Johnson’s ownership claims, James Barber, Henry W. Lemons, and Burton Lemons have sold or oversold their entire mineral interest; that the extent of the Ed Lemons heirs’ mineral interest is drawn into controversy by Johnson’s claims to a Yw mineral interest; and that the vendees of minerals, other than Ray, Schneider, and Now-ery, received all they intended to buy even *137 though Johnson’s claim to a %o mineral interest be recognized. The charges that Union showed favoritism by joining less that all of the parties in interest is, therefore, groundless and unsupported by the evidence. Accordingly, it is our opinion that the concursus was properly filed and that the exception of no cause or right of action is without merit.
Appellant’s next assignment of error is that his title to an undivided %o interest in minerals under the 80 acre tract is established by reference to the authentic act wherein Henry W. Lemons, Burton Lemons, and James Barber conveyed the %o fee interest to Sinney, which interest was in turn acquired by Johnson.
The adverse claimants to Johnson averred, by way of answer, that the instrument which was executed on May 4, 1947, and which forms the basis upon which Johnson’s claims are predicated, is a nullity for the following reasons: the instrument purports to be, in fact, a partition of the succession of Henry and Pennie Lemons and is invalid as such for failure of certain named parties to execute or join in its execution; the instrument purports to be a compromise and settlement but is invalid as such for the reason that all parties did not join in its execution, and for the further reason that one of the parties thereto, Jim Sinney, did not relinquish any claim in the succession of Henry and Pennie Lemons; and that the instrument is invalid as a deed for the reason that no consideration was paid by Jim Sinney for the transfer purported to be made to him. That portion of the instrument which we consider material to this inquiry is as follows:
“Before Me, the undersigned authority, personally came and appeared the sole surviving heirs of Henry Lemons, deceased, and his wife, Pennie Pope Lemons, also deceased, to-wit:
“1. Henry W. Lemons, husband of Dinah Lemons, a resident of Haughton, Bossier Parish, Louisiana, a son;
“2. The heirs of Ed Lemons, deceased, a son of Henry and Pennie Lemons; the sole surviving heirs of Ed Lemons being: [Nine heirs of Ed Lemons listed] ;
“3. James Barber, a grandson, being the sole and only heir of Mary Jane Lemons, deceased, wife of Will Barber; said James Barber being a resident of Bossier Parish, Louisiana;
“4. Burton Lemons, husband of Ada Lemons, a son who lives in Bossier Parish, Louisiana.
“5. Jim Sinney, a son of Pennie Pope Lemons, under a slave marriage, said Jim Sinney residing on the old home place in Bossier Parish, Louisiana.
* * * * * *
“Said heirs further acknowledge and! declare that Jim Sinney is a son of their mother, Pennie Lemons, before her marriage to Henry Lemons.
* * # sfe
“Said heirs further declare that there has never been any succession opened after the death of their father or mother, brother and two sisters, and that they have agreed among themselves that the following shall be their interest in the property, all of the parties preferring this amicable settlement, hereinafter set forth, to the hope of gaining, balanced by the danger of losing, and in order to compromise and adjust all differences between them by mutual consent.
“Therefore, they do now declare that by these presents they do grant, bargain, sell, convey and deliver, with full guarantee of title, and with complete transfer and subrogation of all rights and actions of warranty against all former proprietors of the property herein conveyed unto each other the eighty (80) acres of land in Section 20-17-11, described above, so that said tract of land, together with *138 all buildings and improvements thereon, as well as all rights of action, servitudes, prescription, and improvements appertaining to same, shall be owned by the respective parties as follows :
[There follows an allocation to Henry Lemons of an undivided ^oths interest, and an identical interest to Burton Lemons, James Barber, and the collective heirs of Ed Lemons. Jim Sinney is acknowledged as the owner of an undivided Jioth interest.]
* * * * * *
“and in order to divide the above eighty acre tract as above stated, each and all of the said heirs do now transfer and convey, as well as guarantee title to, the respective interests so that as of this date the property shall be divided and owned as especially set forth hereinabove, each of said parties receiving said above interest, to have and to hold said property unto them, their heirs and assigns forever.
“This transfer and acknowledgment is made for the consideration of adjusting, compromising, and quieting the claims of each of said heirs in and to said property, and each of the parties above now acknowledge that same is a full and adequate consideration for this settlement.”
The instrument was signed by Henry W. Lemons, James Barber, Burton Lemons, and Jim Sinney. Appropriate spaces were designated for the signatures of the nine heirs of Ed Lemons, but none of said heirs executed the document.
In our opinion the foregoing instrument was undoubtedly drawn in an effort to effect a compromise or transaction within the meaning of LSA-C.C. Article 3071, which provides:
“A transaction or compromise is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing.
“This contract must be reduced into writing.”
Agreements so entered into have between the parties “a force equal to the authority of things adjudged”, LSA-C.C. Article 3078, and need no other cause or consideration to support them than that which the Code itself prescribes in Article 3071. Gregory v. Central Coal & Coke Corp., 1941, 197 La. 95, 200 So. 832; Comment, 14 Tul.Rev. 282 (1940).
The consideration expressed in the aforequoted instrument is sufficient to support an agreement of compromise and transaction. Even though Jim Sinney’s claim to an interest in the 80 acre tract could not be successfully proved at the present time, either by evidence of his legitimacy or by proof of the requisite elements for prescriptive title, the instrument’s expressed recognition of an heirship claim in Sinney and his relinquishment'of said claim in consideration of relinquishment by the other named parties of all claims inconsistent with the undivided Mo interest allocated to Sinney constitutes a> sufficiently stated consideration to sustain the validity of the instrument. Sinney’s claim, although perhaps of only limited merit, necessarily presented a dispute, and a reciprocal renunciation of claims, although one be of far greater import than its counterpart, may accomplish a resolution of the dispute in accordance with Article 3701. E. g. 2 Planiol, Civil Law Treatise, Part 2, Nos. 2285-2301. In that regard LSA-C.C. Article 3078 provides that such agreements cannot be attacked on account of lesion.
Nevertheless, we are of the opinion that the instrument, although expressing a sufficient consideration, demonstrates on *139 its face a failure to effect a valid compromise. The failure to which we refer is the fact that nine heirs whose renunciation of claims was obviously contemplated by the instrument, did not renounce any claims. The signing co-owners, in our opinion, renounced certain claims in consideration of reciprocal renunciations of certain claims by the other named heirs. Thus, although the expressed consideration was sufficient to sustain the instrument’s validity, the failure of certain of the heirs to renounce, which failure is patent on the face of the instrument, renders the document unenforceable. Article 1897 of the LSA-Civil Code provides:
“The contract is also considered as being without cause when the consideration for making it was something which, in the contemplation of the parties, was thereafter expected to exist or take place, and which did not take place or exist. A gift in consideration of' a future marriage is void by this rule, if the marriage do not take place.”
Defendant Johnson has referred us to the case of Mims v. Sample, 1938, 191 La. 677, 186 So. 66, 67, as authority for the proposition that an instrument setting out respective interests of co-owners for purpose of clarifying a doubtful condition of title is not an act of partition and hence not invalid because it was not signed by all co-owners. After devoting our careful consideration to the Mims case we have concluded that it is factually distinguishable from the instant case and that the Supreme Court’s holding therein is not conclusive of the question presented by this appeal. The Mims case involved the effect of an instrument referred to as a “Declaration of Ownership” which purported to declare the respective interests of the co-owners of a certain tract of land. Several of the co-owners named in the instrument did not sign, but Spencer Mims, a co-owner who had signed the instrument, was held estop-ped from asserting an interest greater than that assigned him in the declaration. The court concluded:
“Counsel for Spencer Mims raise two additional points in this Court: First, that the document was unenforceable for lack of a valid consideration and, second, that the instrument was an act of partition and as some of the co-owners refused to sign it, the whole transaction failed of accomplishment.
“The defendant Sample, having paid the sum of $6,800 on the strength of the representations set forth in the ‘Declaration of Ownership’, it is clear that insofar as he was concerned, there was a valid consideration. (2) The document is not an act of partition but merely an agreement between the co-owners of what their respective proportionate interests amounted to and was signed for the purpose of clarifying a doubtful condition of the title, due to the fact that it was not clear in what proportions the parties owned the land.” Id., 186 So. at page 72.
The point of distinction between the Mims case and the instant case is that in the former the only disputed claims among the co-owners were with reference to an undivided Vt interest in the tract. Both Mims’ and Sample’s vendors had a paper title to the interest. Therefore, when Mims executed the “Declaration of Ownership” in which the disputed Vr interest was allocated to Sample’s vendors, the compromise of the disputed interest was complete without the necessity of further execution by the other co-owners. The latter parties held no claim to the disputed interest, and their signatures would not, therefore, have settled any dispute or effected any compromise. See, e. g. 2 Planiol, supra, at Nos. 2295 and 2296. Contrariwise, in the instant case the disputed interest was not peculiar to only those parties who signed the instrument. The aforequoted compromise agreement purported to settle a dispute as to the interests of each and every party listed. *140 therein. Such a compromise of all interests could not be legally effected by the agreement thereto of only a portion of the co-owners. LSA-C.C. Article 3072 provides:
“A man to transact must have the capacity to dispose of the things included in the transaction.
“The tutor of a minor or the curator of a person interdicted or absent can not make a transaction without being authorized thereto by the judge.”
Thus, the signing co-owners had not the capacity to compromise the disputed claims of nonsigning co-owners. That the latter parties would reciprocally renounce their claims was, however, obviously contemplated by all parties signing the instrument, and, in our opinion, was the expressed cause or consideration which moved the signing co-owners to affix their signatures. If the nonsigning co-owners had not held any claims to the disputed interests, then, as in the Mims case, it would seem that their execution of the instrument would not have constituted any portion of the consideration for the signatures of the claiming co-owners and would have been superfluous to a compromise effected by the latter parties.
Appellant contends that any attack upon the validity of the compromise agreement has been barred by the prescription of ten years, citing as authority LSA-C.C. Articles 3S44 and 2221; Fried v. Bradley, 1950, 219 La. 59, 52 So.2d 247. In Louisiana Sulpher Mining Company v. Brimstone R. & Canal Co., 1918, 143 La. 743, 79 So. 324, 326, the five year prescription provided by Article 3542 was similarly urged as a bar to an action for rescission or nullity of a contract and the court, with Judge O’Niell as organ on Rehearing, stated:
“The article declares that actions for the nullity or rescission of contracts are prescribed by five years. It has no application to an action to have decreed null a contract that is void on its face. The instrument in question, with the procuration or resolution attached to it, insofar as it purports to convey title to anything more than a right of way or servitude, is null on its face. * * * The test, as to whether the act is only voidable or absolutely void, with that regard, is, not whether it might or might not be ratified, but whether the nullity is only latent or is apparent on the face of the instrument. A sale made by one who does not own the property and has no authority from the owner to sell it might be ratified by the owner, but it is none the less void, not merely voidable.” Followed in Francois v. Alexius, La.App. 1 Cir., 1955, 82 So.2d 113, certiorari denied.
As aforenoted, the compromise agreement relied upon by Johnson discloses on its face an absence of consideration, and “An obligation without a cause, or with a false or unlawful cause, can have no effect.” LSA-C.C. Article 1893. An action to have decreed null a contract that is void on its face is not lost through the running of prescription. Accordingly, we are of the opinion that Johnson’s claim to a portion of the fund on deposit in this proceeding, insofar as such claims are predicated upon the validity of the purported compromise agreement, must be rejected.
Appellant has not strenuously objected to that portion of the lower court’s judgment rejecting the plea of 10 years prescription provided in LSA-C.C. Article 3478, nor has he attempted to re-urge his original position that Jim Sinney was a legal heir to the succession of Henry and Pennie Lemons. Irrespective of whether said contentions have or have not been abandoned, we wish to express our complete concurrence in the findings of the district judge as to each of the stated issues. The inapplicability of the prescription provided by Article 3478 is amply shown by the evidence, and it is equally clear that Jim Sinney was an illegitimate child of Pennie Lemons. Appellant’s attempt to *141 establish that Sinney had been acknowledged was thoroughly unsuccessful.
The final assignment of error is that the lower court erred in not concluding that the mineral servitudes of Ray, Nowery, and Schneider expired by the prescription of ten year nonuser and reverted, at least to the extent of a Ylo mineral interest in the 80 acres, to Johnson, a fee owner. In this regard Johnson contends that Paragraph 22 of the leases executed in favor of Union in 1944 is inadequate to effect an acknowledgment of, and an interruption of prescription running against, the outstanding mineral servitudes. It is further contended that even though the provisions of said Paragraph 22 be regarded as sufficient to interrupt prescription, that he, Johnson, •did not execute said leases and therefore can not be regarded as effecting an acknowledgment of the mineral servitudes. In support of the contentions so advanced appellant has submitted to the court a thorough collection of authorities bearing upon the question of expressed acknowledgment of mineral servitudes. These authorities are, however, of no avail to appellant inasmuch as we have concluded that the fee title asserted by him is invalid. Appellant’s sole claim to a mineral interest under the tract in question is admittedly ■predicated upon the premise that he is an owner in fee. The failure of his fee title -is therefore fatal to his attempt to prove an interest in the funds deposited, and renders unnecessary our consideration of the effectiveness or ineffectiveness of said Para■graph 22 to accomplish its purported objective, to-wit: acknowledgment.
Prior to rendition of the lower court’s judgment, counsel moved and the court so ■ordered that James Richard Nowery, John Edward Nowery and Byron Milton Now-■ery, Jr., be substituted as parties claimant in the place of B. M. Nowery, one of the •original parties to this cause who is now deceased. The death of F. R. Schneider necessitated a substitution of Mrs. Lucille Talley Schneider, Mrs. Marian Schneider Baldwin, Charles Raymond Schneider, and Stephen W. Schneider, as parties claimant in his stead, and an order effecting said substitution was presented to and signed by this court while the cause was pending on appeal. Finally, a substitution of parties was made necessary by the death of Nora Lemons Moch, one of the nine Ed Lemons heirs and an original party to this cause. Substituted as parties claimant in her stead were Pennie Lemons Dickey, Clara Lemons, Clara Campbell Lemons, Cleve Lemons, Eddie Lemons, Mack Lemons, Robert Lemons, and Willis Lemons, who along with the deceased have been collectively referred to hereinbefore as the Ed Lemons heirs. Accompanying each of the several motions to substitute parties were joint stipulations entered into between counsel wherein it was agreed that the judgment of the lower court, insofar as the deaths of the named parties might affect it, should be valid.
Accordingly, it is ordered, adjudged and decreed that Mrs. Lucille Talley Schneider, Mrs. Marian Schneider Baldwin, Charles Raymond Schneider, and Stephen W. Schneider are hereby recognized as the owners together of an undivided %4 interest in the oil, gas and other minerals in and under the South Plalf of Southwest Quarter (S Y¡ of SW YY) of Section 20, further as owners of %28 of Ys interest in all minerals produced from the unitized and pooled unit consisting of the Southwest Quarter (SW Y-) °f Section 20, Township 17 North, Range 11 West, Bossier Parish, Louisiana.
It is further ordered, adjudged and decreed that Mrs. Lucie Leveque Ray and Mrs. Thais E. Ray Soes are hereby recognized as the owners of an undivided Jis interest in the oil, gas and other minerals in and under the South Half of Southwest *142 Quarter (S 54 of SW 54) of Section 20, Township 17 North, Range 11 West, Bossier Parish, Louisiana, and further as owners of %2 of 54 interest in all minerals produced from the unitized and pooled unit consisting of the Southwest Quarter (SW 54) of Section 20, Township 17 North, Range 11 West, Bossier Parish, Louisiana.
It is further ordered, adjudged and decreed that James Richard Nowery, John Edward Nowery and Byron Milton Now-ery, Jr., are hereby recognized as the owners of an undivided Va2 interest in the oil, gas and other minerals in and under the South Half of Southwest Quarter (S 54 of SW 54) of Section 20, Township 17 North, Range 11 West, Bossier Parish, Louisiana, and further as owners of %i of 54 interest in all minerals produced from the unitized and pooled units consisting of the Southwest Quarter (SW (4) °f Section 20, Township 17 North, Range 11 West, Bossier Parish, Louisiana.
It is further ordered, adjudged and decreed that Pennie Lemons Dickey, Clara Lemons, Clara Campbell Lemons, Cleve Lemons, Eddie Lemons, Mack Lemons, Robert Lemons and Willis Lemons are hereby recognized as the owners together, in indivisión, of an undivided one-fourth (54) (twenty-acre) interest in and to all oil, gas and other minerals in the South Half of Southwest Quarter (S 54 of SW 54) of Section 20, Township 17 North, Range 11 West, Bossier Parish, Louisiana, and further, as owners together, in indivisión, of one sixty-fourth (544) interest in all minerals produced from the unitized and pooled unit consisting of the Southwest Quarter (SW 54) of Section 20, Township 17 North, Range 11 West, Bossier Parish, Louisiana.
Except as regards the substitutions of parties as aforestated, the judgment from which appealed is affirmed, with costs of this appeal to be borne by appellant.