200 So. 832

**GREGORY et al. v. CENTRAL COAL & COKE CORPORATION et al.**

No. 35972.

Jan. 6, 1941.

Rehearing Denied March 3, 1941.

Liskow & Lewis and Richard E. Gerard, all of Lake Charles, for plaintiffs and appellants.

Frank E. Powell, of DeRidder, and Plauche & Plauche, of Lake Charles, for defendants and appellees.

ODOM, Justice.

Plaintiffs, Charles E., Elizabeth, and Virginia Gregory, claim to own undivided mineral interests in approximately 18,000 acres of land in the Parishes of Beauregard and Allen. They brought the present suit to have their ownership in the minerals recognized. They claim to own fractional interests in the minerals as follows: 76/10752 mineral interest in the lands described in list No. 1, 4/336 mineral interest in the lands described in list No. 2, and 8/1008 mineral interest in the lands described in list No. 3, which lists are attached to their petition.

Plaintiffs are the children and heirs of Edward E. Gregory, from whom they inherited the interest in the minerals which they now claim. Elizabeth and Virginia Gregory are minors and represented in this suit by their under-tutor, Cecil R. Mid-

dleton. The reason they are represented by their under-tutor is that their mother, Mrs. Charlotte I. Gregory, who is their tutrix, is made defendant in the suit for reasons which appear from the factual set-up hereinafter stated.

The suit is brought against the present fee owner of the land, and others. The fee owner of the land denies that plaintiffs own the mineral interests in the lands as they allege, for reasons which we shall state later on in this opinion. Plaintiffs' demands were rejected and their suit was dismissed by the trial judge, and they appealed.

The manner in which plaintiffs claim to have acquired, and now own, said mineral interests is as follows: On February 8, 1909, William, Alexander J., Martin J., and R. Bruce McPherson, and Mrs. Alice McPherson Spencer, and Mrs. Mary McPherson Bigelow, all then residents of the State of Michigan, conveyed under full warranty of title about 18,000 acres of land, situated in the Parishes of Beauregard and Allen, to the Delta Lumber Company, a Delaware corporation. The deed contained the following reservation:

"Subject however, to our right hereby reserved to ourselves, our heirs and assigns to all oils and other minerals now under or upon said lands, with the right to enter upon said land and explore for, mine and remove all oils and other minerals in the customary manner, all operations in entering upon said lands and exploring for, mining and removing oil or other minerals therefrom, to be conducted in such manner as not to unreasonably inter-

fere with or injure the property, business or operations of the said Delta Lumber Company, its successors or assigns in cutting and removing the timber on said land, and converting the same into lumber and carrying on the business of manufacturing lumber on said land, or any part thereof."

On June 30, 1913, the Delta Lumber Company conveyed the same property to the Delta Land & Timber Company, another Delaware corporation, the sale being made subject to the mineral reservation retained by the McPhersons in their deed to the Delta Lumber Company, dated February 8, 1909.

It is admitted that the reservation or servitude retained by the McPhersons was never exercised and that the running of the 10-year prescription was never interrupted or suspended in any manner recognized by law; so that the McPhersons' servitude expired by limitation on February 8, 1919, under the holding in Frost-Johnson Lumber Co. v. Salling's Heirs et al., 150 La. 756, 91 So. 207.

But on December 30, 1922, after the McPhersons' mineral servitude had expired by limitation and had been lost to them, the Delta Land & Timber Company, which had acquired the fee title to the lands from the Delta Lumber Company, executed in the State of Missouri an act, notarial in form, reciting in part that:

"It did and does grant, convey, set over, abandon and relinquish unto the said original vendors [the McPhersons], their heirs, assigns, and estates, all and singular, all oil and other minerals now under said above

described land, with the right to enter upon said land and explore for, mine and remove all such oils and other minerals in the customary manner, with the right to construct and remove such instrumentalities as may be necessary or convenient therefor; said right of ingress and egress for the purpose of carrying on said operations being hereby granted in perpetuity."

The lands described in this instrument are the lands sold by the McPhersons to the Delta Lumber Company on February 8, 1909. This grant was made to the McPhersons, who were the grantors in the deed dated February 8, 1909. The instrument recites that some of the McPhersons had died and that their successions had not been legally settled and closed, and that some of them had disposed of their property by last will. The instrument further recites that the heirs and legal representatives of those who had died are entitled to such oil and other mineral rights in the land as were originally reserved by their deceased ancestors. The act further recites that Alexander McPherson, one of the original grantors, was dead, and that Edward E. Gregory was one of his seven residuary legatees. It thus appears that plaintiffs, who are the children and heirs of Edward E. Gregory, trace their title to the minerals which they now claim back to Alexander McPherson, one of the original grantors named in the deed dated February 8, 1909.

Edward E. Gregory, the father of these plaintiffs, died on June 10, 1923, and plaintiffs were recognized as his sole forced heirs by judgment rendered in Suc-

cession of Edward E. Gregory, No. 345 on the docket of the Civil District Court for the Parish of Beauregard. Plaintiffs were then minors, and two of them are yet minors. Their mother, Mrs. Charlotte I. Gregory, qualified as their natural tutrix.

The Central Coal & Coke Corporation, the principal defendant in this proceeding, acquired the land involved from the Delta Land & Timber Company through a bankruptcy proceeding. A man named Cornelius Doornbos purchased a portion of the land at a tax sale. He is made a defendant in this case, although he seems to have no real interest because the lands which he purchased were redeemed by someone interested in the land.

Mrs. Charlotte I. Gregory is also made a defendant in the case because, after qualifying as natural tutrix of her minor children, she provoked a sale of the mineral interest inherited by the plaintiffs from their father for the purpose of effecting a partition thereof. She alleged that the mineral interests belonged to the community which had existed between her and her deceased husband, and that she was the owner of an undivided one-half interest therein. The plaintiffs in the present proceeding attack the sale which their mother made on the ground that the mineral interest was not an asset of the community but was property which belonged to their father individually, and that therefore the sale made by their mother was null and void. Plaintiffs in the present proceeding attack the sale and ask that it be set aside, and for that purpose made their mother a defendant in this proceeding.

R. Bruce McPherson was made a defendant because he purchased the mineral interests sold by Mrs. Charlotte I. Gregory to effect a partition.

The defendants Doornbos, Mrs. Gregory, and McPherson made no real defense to the suit. In their answers they admitted practically all the allegations made by plaintiffs and pray that such judgment be rendered as the law and the evidence warrant.

These plaintiffs base their claim upon the theory that the transfer made by the Delta Land & Timber Company on December 30, 1922, to the McPhersons, their heirs and legal representatives was in effect the granting of a mineral servitude upon the lands, which servitude, though never exercised or used, has not prescribed because of their minority. They cite several cases decided by this court holding that prescription in matters of this kind does not run against minors.

■ Since plaintiffs were all minors when they acquired their interest by inheritance from their father at his death, which occurred in 1923, or about one year after the alleged servitude was granted, and since two of them are yet minors, their claim to an interest in the minerals must be sustained if the transaction between the Delta Land & Timber Company and the McPhersons and their heirs and legal representatives was a legal and valid grant of the minerals, and if plaintiffs did not lose their rights by virtue of the sale of their interest

in the minerals made by their mother, as already mentioned.

In this connection, we find that it is conceded by the defendants that the sale of the mineral interests made by the mother of the minors to R. Bruce McPherson in 1926 was null and void. Therefore, this point has passed out of the case and need not be discussed further.

The real defense to the action brought by plaintiffs is set up in paragraph 6 of the Central Coal & Coke Corporation's answer, which is that the transfer made by the Delta Land & Timber Company to the McPhersons on December 30, 1922, was null for want of consideration. It says in its answer: "defendant shows that the said act was, on its face, absolutely null and void ab initio, because it was patently without any cause or consideration, or with a false cause or consideration, and could, therefore, have no effect; that the said act vested no title in the pretended grantees to the mineral rights in the said land, but was and is, on its face, nudum pactum, and without any force or effect, and is as if not written."

The trial judge sustained this defense and dismissed plaintiff's suit. We think the judge erred in his ruling. His error arises out of his wrong interpretation of the real purpose of that transaction. He held, and correctly, that the McPhersons, their heirs and legal representatives lost completely the servitude which they retained when they sold the land to the Delta Lumber Company on February 8, 1909. That servitude expired on February 8, 1919, because it was never used and the running

of prescription was not interrupted or suspended.

It is perfectly evident that what the Delta Land & Timber Company intended to do when it executed the instrument dated December 30, 1922, was to restore to the McPhersons that which they had lost by the prescription of 10 years. The trial judge thought, and counsel for defendants now contend, that the transfer of these minerals back to the McPhersons was a new or independent contract and was made without any consideration whatsoever; that, the original servitude having been lost, the fee owners of the land were under no obligation whatever to restore the minerals to the original vendors, and for that reason the transfer was not binding, under Article 1893 of the Revised Civil Code, which reads as follows:

"An obligation without a cause, or with a false or unlawful cause, can have no effect."

If it had been the primary purpose of the Delta Land & Timber Company to make an outright sale or donation of the minerals to the McPhersons and their representatives, the ruling of the judge might be correct. But such, in our opinion, was not the purpose of the transaction. It is clear to us that this contract was in the nature of a transaction or compromise and is governed by Articles 3071 and 3078 of the Revised Civil Code, which read as follows:

"Art. 3071 (3038). Transaction or Compromise. A transaction or compromise is an agreement between two or more persons, who, for preventing or putting an end to a

lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing.

"This contract must be reduced into writing."

"Art. 3078 (3045). Compromise is Res Adjudicata: Error: Lesion. Transactions have, between the interested parties, a force equal to the authority of things adjudged. They can not be attacked on account of any error in law or any lesion. But an error in calculation may always be corrected."

The instrument dated December 30, 1922, referred to the original sale of the land by the McPhersons to the Delta Lumber Company on February 8, 1909, and recites in Paragraph 4:

"That as a constituent and vital part of the consideration for the execution of said deed, the following paragraph was written therein:"

Then follows a literal quotation of the mineral reservation made by the McPhersons in that deed. Paragraph 6 of the instrument reads in full as follows:

"Appearer corporation moreover declared that by reason of recent decisions of the Supreme Court of the State of Louisiana, the vendors of the Delta Lumber Company as aforementioned, their heirs and assigns have been deprived of the rights originally reserved by them by virtue of said oil and other mineral reservation, thus nullifying and divesting them of a vital part of the consideration for which said original trans-

fer was made, and thereby endangering said transfer on account of failure of adequate consideration."

Evidently the decision of the Supreme Court of Louisiana referred to in that paragraph was the case of Frost-Johnson Lumber Co. v. Salling's Heirs et al., 150 La. 756, 91 So. 207, which was decided on second rehearing on February 17, 1922, about 10 months prior to the date of this contract. In the Frost-Johnson case, it was held that a sale of land with reservation of such minerals as gas and oil does not purport to reserve the ownership of the oil and gas but purports merely to reserve only a real right in the nature of a servitude upon the land, which servitude is lost by the prescription of 10 years under Articles 789, 3529, and 3546 of the Revised Civil Code.

In the Frost-Johnson case, the contention of the vendors of the realty was that the effect of a sale of land with reservation of the fugitive minerals, such as oil and gas, was to reserve the ownership of those minerals and thereby, in effect, to create two estates, one consisting of the minerals reserved and the other consisting of the land itself without the minerals; and further, that the minerals reserved were owned in perpetuity. The contention on the other side was that the reservation of the fugitive minerals amounted only to the reservation of a real right in the nature of a servitude, which expired by limitation in 10 years.

These respective contentions, or theories, had not theretofore been presented to the courts of this state for decision. Some of the ablest counsel of this state participated

in that case. The arguments made showed that there was a sharp divergence of opinion among the lawyers of the state as to the effect of such mineral reservations. Furthermore, the three separate opinions written by different members of this court show that the judges themselves were almost hopelessly divided in their opinions as to the merits of the respective contentions made. The case was before this court for more than two years. The opinion on first hearing was handed down January 5, 1920. A rehearing was granted, and the second opinion was handed down May 2, 1921. A second rehearing was granted, and the final opinion was handed down February 17, 1922, from which final opinion the chief justice and two of the associate justices dissented.

The language of the instrument dated December 30, 1922, indicates that the McPhersons thought that, by reserving the minerals, their title to them would run in perpetuity, and apparently the successors to the vendee thought so, too. It is perfectly clear that the parties to that instrument considered that the reservation of the minerals was a vital part of the consideration for which the sale was made. This the McPhersons lost under the ruling in the Frost-Johnson case.

It is perfectly clear that the Delta Land & Timber Company was much concerned and disturbed as a result of the ruling in the Frost-Johnson case. It was concerned and disturbed because its counsel, who prepared the instrument, seem to have considered that the McPhersons might have a cause of action to set aside the original sale

because of the failure of consideration. The instrument itself recites that the McPhersons had lost that which it was conceded belonged to them.

Section 9 of the instrument recites that the individuals and the estates of the deceased individuals who had since died "are legally entitled to said oil and other mineral rights and such other franchises and privileges as were originally reserved as aforesaid". Evidently the McPhersons and others were contending that they were legally entitled to the minerals regardless of the ruling in the Frost-Johnson case. The instrument itself clearly sets forth in Paragraph 10 thereof the real reason for its execution. That paragraph reads, in so far as it need be quoted, as follows:

"That being anxious to set at rest all questions with reference to the validity of said consideration, and to restore to said original vendors, their heirs, assigns and estates the oil and other mineral rights reserved in said original deed in good faith as aforesaid, thereby removing any possible cloud from Appearer's title, appearer further declared that in consideration of the premises and of the facts as hereinbefore set out, it did and does grant, convey, set over, abandon and relinquish unto the said original vendors, their heirs, assigns, and estates, all and singular, all oils and other minerals now under said above described land, * * *".

Clearly the Delta Land & Timber Company by the execution of this instrument did not intend to make an outright grant or donation of the minerals to the McPhersons and their heirs as a mere gratuity. What

it intended to do, as stated in Paragraph 10 of the instrument, was "to set at rest all questions with reference to the validity of said consideration, * * * thereby removing any possible cloud from Appearer's title". Its purpose was to avoid possible litigation with the original vendors relating to the question whether the original sale in 1909 might be set aside on account of inadequate consideration, and to remove any possible cloud from its title. In order to do this, it was willing to, and did, "restore to said original vendors" the mineral rights which they had originally reserved.

This was therefore a transaction or compromise. It was an agreement between the parties to adjust their differences by mutual consent, Civil Code, Article 3071. This transaction had between the parties "a force equal to the authority of things adjudged". Civil Code, Article 3078. Transactions of this kind need no other cause or consideration to support them than that which the Code itself prescribes in Article 3071. The manner in which the parties settled their differences was preferred by each to the hope of gaining, balanced by the danger of losing.

The ruling in Breard v. Pyramid Oil & Gas Co., 191 La. 420, 185 So. 303, is applicable here. In that case it was held that the mere advantage of certainty with reference to the controverted rights of the parties interested in oil and gas leases constituted

sufficient consideration for a supplemental oil and gas lease agreement determining the controverted rights of the parties.

Counsel for defendants say in their brief that after the decision in the Frost-Johnson case there were no legal differences between the parties to be compromised, for the reason that the McPhersons and their heirs and representatives had lost entirely all rights which they had reserved. It is true that the McPhersons had lost their rights. But that is beside the question here. The facts are that it is evident that counsel for the Delta Land & Timber Company thought the McPhersons did have legal rights, which counsel thought should be compromised and set at rest in the interest of their client. They did not want a lawsuit, nor did they want what they considered a cloud to rest upon their client's title to the land and the timber which it had acquired. The avoidance of legal controversy and the clearing of the title to the property of all cloud were sufficient consideration to support the transaction.

For the reasons assigned, the judgment appealed from is reversed and set aside, and it is now ordered and decreed that there be judgment in favor of the plaintiffs and against the defendants as prayed for; all costs to be borne by the defendant Central Coal & Coke Corporation.

O'NIELL, C. J., does not take part.