651 So.2d 382 (1995)
Karen Lynn LaFleur UNKEL, Plaintiff-Appellant,
v.
Steven Patrick UNKEL, Defendant-Appellant.
No. 26,650-CA.
Court of Appeal of Louisiana, Second Circuit.
March 1, 1995.
*383 Clifford L. Lawrence, Jr., Monroe, for Karen Unkel.
A. Shawn Alford, Farmerville, for Steven Unkel.
Before MARVIN, NORRIS, and BROWN, JJ.
MARVIN, Chief Judge.
Mrs. Unkel appeals a March 17, 1994, judgment that found her at fault in the breakup of the marriage and denied her permanent alimony. Urging that his obligation to pay alimony pendente lite ended when the December 9, 1993, judgment of divorce between them became definitive, Dr. Unkel appeals an April 6, 1994, judgment that ordered him to continue paying alimony pendente lite until the March 17, 1994, judgment appealed by Mrs. Unkel becomes definitive.
We affirm each judgment for these reasons:

FACTS
Dr. and Mrs. Unkel were married in 1977 and thereafter had two sons. While Dr. Unkel completed medical school and practiced medicine, Mrs. Unkel served the family as wife and mother.
Not long after the birth of their younger son Mrs. Unkel became mentally depressed. She sought treatment for her depression for 14 years. One of her doctors prescribed Xanax for her, a drug in the benzodiazepine class used for management of anxiety disorders or short term relief of symptoms of anxiety. Her husband filled these prescriptions with samples from his office, though he was opposed to her using such a drug. Mrs. Unkel eventually had to be hospitalized because she became addicted to the drug. After she left the hospital, the same doctor put her on another type of benzodiazepine.
Mrs. Unkel enjoyed spending money. She had a $1400 per month allowance for groceries. She often became overdrawn at the bank, she charged credit cards up to the maximum, and took out loans without her husband's knowledge. Each time she reached a financial crisis, Dr. Unkel bailed her out, paid off the creditors, and cut up her credit cards. Although her husband's embarrassment and displeasure over this behavior were known to her, Mrs. Unkel always obtained more credit and credit cards. She explains that shopping is "all [she] had to do for recreation."
The trial court found that Mrs. Unkel's spending habits were the primary problem between her and Dr. Unkel. The record clearly supports this finding. Mrs. Unkel's spending habits continued after she voluntarily left the family home without cause. Although Dr. Unkel allowed her to take whatever items she wanted from the family home, she charged all new furnishings, appliances, linens, and housewares, totaling over $7,000 when she moved from the home. A witness said that Mrs. Unkel told her she had never had a gift shower, and that "this was like a gift from her to her." Mrs. Unkel's chief complaint about her marriage was she did not have enough money to spend.
Based on the circumstances we have summarized, the trial court concluded Mrs. Unkel had failed to carry her burden of proving she was without fault during the marriage, and thus denied her permanent alimony in the March 17, 1994, judgment. The trial court relied on this court's opinion in Allen v. Allen, 642 So.2d 202 (La.App.2d Cir.1993), reversed, however, after this appeal was entered. Allen v. Allen, 94-1090 (12/12/94), 648 So.2d 359 (La.1994).
The April 6, 1994, judgment or order continued the award of alimony pendente lite to Mrs. Unkel pending the resolution of the issue of fault on appeal. The April 6, 1994, order states that any alimony pendente lite *384 erroneously awarded should be credited toward a property settlement.
Appealing the award continuing alimony pendente lite, Dr. Unkel urges that when the December 9, 1993, divorce judgment of the divorce, entered as a consent judgment in a separate action, became definitive, the obligation to pay alimony pendente lite, as an "incident" of marriage, was subsumed or simultaneously terminated with the marriage.

PERMANENT ALIMONY
Mrs. Unkel asserts that the trial court was clearly wrong in finding her at fault in the break-up of the marriage. She alternatively contends her depression and addiction to Xanax legally constitute a mental illness that is a defense to fault. Kaplan v. Kaplan, 453 So.2d 1218 (La.App.2d Cir.1984), writ denied. If she is at fault, and her emotional problems do not amount to fault-vitiating mental illness, Mrs. Unkel then argues that her actions were a reasonable reaction to the conduct of her husband that renders him, and not her, at fault. See Allen, supra.

Factual Finding of Fault
A spouse claiming permanent alimony bears the burden of showing he or she was without fault in the break-up of the marriage. Lagars v. Lagars, 491 So.2d 5 (La.1986); Vicknair v. Vicknair, 237 La. 1032, 112 So.2d 702 (1959); Currier v. Currier, 599 So.2d 456 (La.App.2d Cir.1992). "Fault" in this context contemplates conduct or substantial acts of commission or omission by the claimant violative of her marital duties and responsibilities. Allen, supra; Pearce v. Pearce, 348 So.2d 75 (La.1977). A spouse who petitions for alimony need not be totally blameless in the marital discord. Only misconduct of a serious nature, providing an independent contributory or proximate cause of the break-up, equates to legal fault. Pearce, supra. A trial court's findings of fact on the issue of a wife's "fault" will not be disturbed on appeal unless found to be manifestly erroneous.
Before the repeal of Civil Code Article 138, fault which would preclude alimony was held to be synonymous with the grounds for separation in that article, including adultery, habitual intemperance, excesses, cruel treatment or outrages, and abandonment. Lagars, supra; Adams v. Adams, 389 So.2d 381 (La.1980). After Article 138 was repealed, the only statutory grounds for divorce are adultery or punishment for a felony by death or hard labor. In determining the issue of fault which bars permanent alimony, courts must refer to the prior jurisprudential criteria. Allen, supra. This jurisprudence, unchanged by the legislative repeal of former Civil Code Article 138, equates alimony-barring fault to those faults enumerated in that article. Kaplan, supra.
The trial court gave great weight to the testimony of Mary Vidrine, a close friend of Mrs. Unkel. Mrs. Vidrine said Mrs. Unkel had never wanted to work out her marital problems in the four years she had known her. Mrs. Unkel often talked of leaving, only to be dissuaded each time by Mrs. Vidrine and Dr. Unkel. Mrs. Vidrine said Mrs. Unkel's main complaint was the lack of funds at her disposal.
As a secondary complaint, Mrs. Unkel said her husband did not spend enough time with her and their sons, because when he was not working he went to his hunting camp, or to Bible study, or to work out. Assessing Mrs. Vidrine's credibility, the trial court found the reason that Mrs. Unkel left home was because she wrongly perceived she did not have enough spending money and Dr. Unkel did not spend enough time with his family. Mrs. Unkel challenges Mrs. Vidrine's testimony because the Vidrines continue to attend the same church as Dr. Unkel and are involved in the same Bible study group. Credibility assessments are the prerogative of the finder of fact and are entitled to great weight. Pearce, supra.
The record supports the conclusion that Mrs. Unkel left the matrimonial domicile without lawful cause, as she had threatened to do several times, filing her action for divorce four days after leaving. Such abandonment is legal fault that precludes permanent alimony. Cf. Allen, supra. In the absence of legal error, our responsibility is to review the factual record in the light that most favorably supports the judgment which is appealed. The appeal is from the judgment. *385 See Whitacre v. Halo Optical Products, Inc., 501 So.2d 994 (La.App.2d Cir. 1987).
Mrs. Unkel suggests that we should consider the factors enumerated in CC Art. 112 to determine the fault issue. The factors in that article are to be considered, however, "[w]hen a spouse has not been at fault ..." CC Art. 112A(1). Our emphasis. The trial court having correctly found alimony-barring fault on the part of Mrs. Unkel, we do not consider the Art. 112 factors that Mrs. Unkel urges.
Mrs. Unkel asserts that we should consider Dr. Unkel's earning capacity in our determination of her entitlement to permanent alimony. When weighed in the light of the obligor spouse's income, the spending habits of a spouse claiming permanent alimony may or may not be extravagant or rise to the level of alimony-barring fault. See Allen, supra. A claimant spouse's abandonment that bars alimony, however, is not legally affected by the relativity between the claimant spouse's spending habits and the obligor spouse's income. Dr. Unkel's $200,000 annual income simply does not justify Mrs. Unkel's abandonment. Only when the claimant spouse is not otherwise at fault, do the CC Art. 112 factors apply.

Mental Illness as a Defense to Her Fault
Mrs. Unkel asks this court to find that the combination of her depression and her addiction to the prescription drug Xanax amount to mental illness. Where the actions and behavior of the claimant spouse, which would otherwise amount to alimony-precluding fault, are involuntarily induced by a pre-existing mental illness, the actions will be excused. See Kaplan, supra.
None of Mrs. Unkel's many counselors testified. No medical records were introduced. Moreover, the record indicates that Mrs. Unkel may have refused to respond to the request for production of records about her mental health counseling. At any rate, the record contains no expert testimony or other evidence to show Mrs. Unkel was medically diagnosed as mentally ill.
The record before this court suggests that Mrs. Unkel may have been addicted to Xanax reluctantly provided to her by her husband because her doctor prescribed it. He testified that he gave her professional samples only in the dosage prescribed by her own doctor, Frank Weinholdt, to save money, instead of purchasing the drug from a pharmacy. Dr. Unkel explained that he never prescribes the drug to his own patients because the danger of addiction is too great. Mrs. Unkel acknowledged Dr. Unkel made his objections known to her as well as to Dr. Weinholdt, adding that Dr. Unkel told her "all along" that he did not want her on Xanax. Although Mrs. Unkel required hospitalization to be taken off the drug, she was again prescribed another drug in the benzodiazepine class by Dr. Weinholdt.
We cannot hold on this record that Mrs. Unkel had a mental illness. Mrs. Unkel could have produced her medical records or expert testimony. While we agree Mrs. Unkel had mental problems, we cannot conclude that Mrs. Unkel's mental condition was a mental illness within the meaning of Kaplan which would excuse her abandonment.

Her Actions as Reasonable Reactions to Her Husband's Fault
Mrs. Unkel's final argument is that her actions, if constituting fault in the break-up of her marriage, were a reasonable reaction to her husband's initial fault. She complains of Dr. Unkel spending too much time at his hunting camp, refusing to take her on a trip to Colorado, wanting her to accept marriage counseling from the Elders of their church, and of his "part" in her addiction to Xanax, and his purchase of a python.
Assessing these complaints, the trial court concluded Dr. Unkel was not at fault. We have discussed Dr. Unkel's "part" in giving her Xanax as prescribed by another doctor. Occasional visits to a hunting camp are not excessive and thus do not rise to the level of legal fault. The trip to Colorado could not have been made because of Mrs. Unkel's fear of flying, her fear of driving on interstate highways and her fear of bridges. Elders in the church the Unkels attended are accepted by church members as family counselors, notwithstanding their lack of secular certification. This practice is a part of the Jehovah *386 Witnesses' faith, to which both Dr. and Mrs. Unkel subscribed.
Dr. Unkel and his sons bought the python when visiting New Orleans on the weekend that Mrs. Unkel said she was going to move from the family home. When arriving home, they found Mrs. Unkel had not moved. She remained there for three more weeks. She said, "[The snake was] not what made me leave, but it sure didn't help."
We cannot find clearly wrong the finding of the trial court that none of the asserted "fault" of Dr. Unkel justified her leaving. The trial court correctly denied permanent alimony.

CONTINUATION OF ALIMONY PENDENTE LITE
In the April 6, 1994, judgment or order the trial court continued Dr. Unkel's obligation to pay his former wife alimony pendente lite, notwithstanding that the judgment of divorce rendered in a separate action became definitive. Dr. Unkel contends that when the marriage is terminated, one spouse's pendente lite obligation to support the other spouse should also terminate. He argues that the payment of alimony pendente lite is based on the concept of support of the community, and thus when the marriage and community terminate, the right to receive alimony pendente lite also terminates. The established jurisprudential view is that the payments continue until all judicial determinations concerning the marriage and its incidents have become definitive. Our emphasis. We have held that alimony pendente lite continues until final determination of the permanent alimony-fault question. Miguez v. Miguez, 604 So.2d 1056 (La.App.2d Cir.1992), writ denied, citing earlier authorities.
The practice of allowing the divorce litigation to be conducted in separate proceedings where an incidental issue may be fairly and timely litigated is not inefficient or unnecessarily burdensome on domestic litigants. Separate and timely resolution of the incidental issues, on the one hand, may expedite and facilitate a divorce where, as here, divorce is inevitable, or, on the other hand, may ease some inherent animosity in divorce proceedings where divorce is not inevitable, and thus facilitate or encourage family reconciliation.
A pronouncement that all issues arising out of a marriage and its incidental obligations should be resolved at one time and in one proceeding would not serve the institution of marriage or judicial efficiency. Unnecessary motions for new trial and appeals would result. Our experience leads us to conclude that it is more efficient to resolve issues incident to the marital obligation as they arise even though some issues in the course of separate but connected litigation are not finally resolved until after the marriage is terminated by a definitive judgment. We do not follow Wheelahan v. Wheelahan, 93-1964 (10/27/94) 644 So.2d 1125 (La. App.4th Cir.1994). Compare Cassidy v. Cassidy, 477 So.2d 84 (La.1985), and Miguez, supra.
The trial court correctly ordered Dr. Unkel to continue paying Mrs. Unkel alimony pendente lite until the permanent alimony-fault issue is definitively resolved.

CREDIT TOWARD COMMUNITY PROPERTY SETTLEMENT
Apparently because the trial court recognized the Unkel divorce judgment had become definitive when the 1994 judgments here appealed were rendered, the trial court's order to continue payment of alimony pendente lite stated that "[a]ny alimony pendente lite, if erroneously awarded, shall be credited toward a property settlement." That statement is rendered moot by our finding that the trial court correctly continued the alimony pendente lite until the fault adjudication becomes definitive. The established rule is that payment of alimony pendente lite should not be credited against the community because the obligation to pay such alimony arises from the marriage and is not to be considered as a debt of the community. Miller v. Miller, 405 So.2d 564 (La.App.3d Cir.1981); Gondrella v. Gondrella, 347 So.2d 938 (La.App.4th Cir.1977). See also cases cited in footnote 2 of Rearden v. Rearden, 568 So.2d 1111 (La.App.2d Cir. 1990). In view of our holding, other courts and litigants should consider the trial court's *387 statement about credit toward the community property settlement as a mere precautionary statement applicable solely to the circumstances of this case. The issue being moot, we do not and need not address the propriety of the statement or speculate about our ruling thereon if we had agreed that the trial court's continuation of alimony pendente lite was legally erroneous.

DECREE
We affirm the March 17, 1994, judgment at Mrs. Unkel's cost. We affirm the judgment or order of April 6, 1994, at Dr. Unkel's cost. Alimony pendente lite shall terminate when this opinion becomes definitive.