699 So.2d 472 (1997)
Karen Lynn UNKEL, Plaintiff-Appellant,
v.
Stephen Patrick UNKEL, Defendant-Appellee.
No. 29728-CA.
Court of Appeal of Louisiana, Second Circuit.
August 20, 1997.
*473 Clifford L. Lawrence, Jr., for Plaintiff-Appellant.
A. Shawn Alford, Farmerville, for Defendant-Appellee.
Before MARVIN, BROWN and WILLIAMS, JJ.
MARVIN, Chief Judge.
This appeal is a sequel to Unkel v.Unkel, 26,650 (La.App.2d Cir. 3/1/95), 651 So.2d 382, wherein we affirmed a March 17, 1994 judgment that denied Mrs. Unkel permanent alimony and an April 6, 1994 order directing Dr. Unkel to continue to pay pendente lite alimony until the March 17, 1994 judgment became definitive.
While those appeals were pending, the litigants negotiated to settle their dispute over the partition of community property, one condition of which terminates "alimony pendente lite as of the date of the settlement." With other conditions, that condition was first written in a letter of June 10, 1994, by Dr. Unkel's counsel to Mrs. Unkel's counsel. When the community property settlement was signed on August 17, 1994, Mrs. Unkel and her counsel signed an addendum that was written on a copy of the June 10, 1994 letter containing the quoted condition. This addendum stated that Mrs. Unkel and her counsel: "Agreed to conditions as of the date of execution of community property settlement 8/17/94."
After this court's judgment of March 1, 1995, in Unkel v. Unkel, supra, affirmed the trial court and became definitive on April 1, 1995, Mrs. Unkel instituted an action demanding pendente lite alimony [$19,376] allegedly due and owing between August 17, 1994 [the date of the settlement], and April 1, 1995, the date of definity of this court's judgment. The trial court's 1996 judgment in that action, which is here appealed, effectively recognized Mrs. Unkel's waiver of temporary alimony in the August 17, 1994 settlement and rejected Mrs. Unkel's demands. Dr. Unkel answers Mrs. Unkel's appeal, complaining that the trial court should have granted his C.C.P. art. 863 motion to sanction Mrs. Unkel and her counsel.
We affirm, finding without merit Mrs. Unkel's contentions that the addendum to the June 10, 1994 letter signed by her on August 17, 1994, is ambiguous and contrary to her intention to merely "suspend" temporary alimony until after the court of appeal judgment became definitive, or, in any event, the "waiver" is contra bonos mores and is not supported by consideration.

FACTS
The parties married in 1977 and last lived together on April 25, 1993. In her divorce action, filed four days later, Mrs. Unkel sought and was awarded temporary alimony. To Dr. Unkel's later motion for divorce, Mrs. Unkel answered and sought permanent alimony. The divorce judgment, signed December 9, 1993, did not address fault-permanent alimony, and was not appealed.
Mrs. Unkel's rule for permanent alimony was heard in December 1993. A judgment of March 17, 1994, found her at fault and denied her permanent alimony. When that judgment was appealed April 6, 1994, the trial court also signed a judgment recognizing Dr. Unkel's continuing obligation to pay temporary alimony during the pendency of that appeal. We affirmed both judgments on March 1, 1995.
About the time the appeals in Unkel v. Unkel, supra, occurred, the Unkels, through counsel, began to negotiate settlement of community property disputes. Mrs. Unkel's counsel prepared and submitted to Dr. Unkel's counsel a draft of a proposed settlement. Dr. Unkel's counsel responded in the letter of June 10, 1994, which suggested some changes in the draft and emphasized that the terms of the proposed settlement:
"are acceptable to Steven Unkel IF AND ONLY IF the following provisions are made:
1. * * * .
2. Simultaneously with the execution of the community property settlement, there shall be a stipulated judgment signed by the parties and their counsel which terminates the alimony pendente lite as of the date of execution of the settlement.

*474 3. There are sufficient funds placed in either your or my trust account, or in another form of escrow, to reimburse Steven Unkel for all sums paid to your client subsequent to the divorce (under Judge Bleich's orders) in the event Judge Bleich is reversed on appeal."
Apparently without otherwise responding to the June 10 letter, Mrs. Unkel and her counsel appeared at the office of Dr. Unkel's counsel on August 17, 1994, announcing their desire to execute a conventional community partition, a draft of which they brought with them. Called by his counsel, Dr. Unkel arrived and final discussions occurred.
On August 17, 1994, neither counsel had prepared the stipulated judgment terminating the alimony pendente lite as contemplated in the June 10, 1994 letter. Dr. Unkel's counsel requested Mrs. Unkel and her counsel evidence their agreement with Dr. Unkel's conditions by signing a copy of the June 10, 1994 letter. The addendum, stating that Mrs. Unkel and her counsel "agreed to conditions [in the letter] as of date of execution of community property settlement 8/17/94," was then handwritten on a copy of the June 10, 1994 letter. Mrs. Unkel and her attorney then signed the addended letter and the conventional community partition was signed by each party in the attorney's office on August 17, 1994.
When the above agreements were signed, Dr. Unkel wrote one check to Mrs. Unkel for part of the amount provided in the partition that was due her. The remainder was paid later. He wrote a second check on August 17, 1994, for $902.12, which represented, pro rata, the monthly temporary alimony owed her through August 17, 1994.
After the judgment in Unkel v. Unkel, supra, became definitive, Mrs. Unkel's counsel wrote to Dr. Unkel's counsel on June 14, 1995, suggesting that Dr. Unkel owed temporary alimony between August 17, 1994, and April 1, 1995, the date Unkel v. Unkel, supra, became definitive. Dr. Unkel's counsel promptly responded by a letter of June 16, 1995, which explained that because the parties had agreed on August 17, 1994, that alimony payments would terminate as of August 17, 1994, the date of the community property settlement, Dr. Unkel owed no alimony. This response caused Mrs. Unkel to institute her 1995 action that alleged temporary alimony was past due between August 17, 1994, and April 1, 1995, the date the judgment in Unkel v. Unkel became definitive. The judgment in her action, signed in 1996, is here appealed.

DISCUSSION

Transaction and Compromise;

Cause v. Consideration
We find that the Unkels entered into a transaction and compromise on August 17, 1994, to resolve their differences, and to end pending, or prevent threatened, litigation. La. C.C. art. 3071. On the one hand, Mrs. Unkel desired an immediate conventional partition and receipt of specific community assets and funds, rather than the delay, effort and expense of judicially enforcing partition of the community. Her counsel prepared and submitted to Dr. Unkel's counsel before June 10, 1994, a draft of her proposed conventional partition. Dr. Unkel, on the other hand, was concerned whether he owed her temporary alimony after the divorce judgment became final [the issue in his appeal], and that if he agreed to her proposed community settlement and paid her money, whether she would exhaust, or place beyond his reach, her funds if this court agreed with his assertions on his appeal. His June, 10, 1994 letter clearly addresses and makes those concerns conditions of his agreeing to a conventional partition.
Without Dr. Unkel's agreement to the partition draft that was prepared and brought to the office of Dr. Unkel's counsel on August 17, 1994, Mrs. Unkel's recourse was to file a suit for partition under La. R.S. 9:2801 et seq. She agreed to his conditions to obtain his agreement to her settlement proposal on August 17, 1994. In this sense, and notwithstanding that she is assumed correct in arguing that she received no more than her one-half community share in the settlement, cause in the civilian concept supports the res judicata effect of the transaction and compromise Mrs. Unkel executed with Mr. Unkel *475 on August 17, 1994. See La. C.C. arts. 1967 and 3071.
Consideration, in the common-law sense, is not a prerequisite for a valid contract in Louisiana, and is distinguished from cause. See comment (c), Art.1967, explaining that cause is not common law consideration and that the reason why a party obligates himself "need not be to obtain something in return or to secure an advantage for himself." A transaction and compromise requires no other cause than an adjustment of differences and avoidance of litigation, the cause prescribed by Art. 3071. Gregory v. Central Coal & Coke Corp., 197 La. 95, 200 So. 832 (La.1941); Perault v. Time Ins. Co., 633 So.2d 263 (La.App. 1st Cir.1993), writ denied.

Ambiguity
We also agree with the trial court that the language of the June 10 addended letter, quoted above, is not ambiguous. The addended letter clearly states that Dr. Unkel would agree to the community property settlement proposed by Mrs. Unkel if and only if Mrs. Unkel agreed to "a stipulated judgment signed by the parties .... which terminates the alimony pendente lite as of the date of execution of the settlement." [Emphasis added.] The trial court accepted the explanation of Dr. Unkel's counsel why the addendum was written on the June 10, 1994 letter in lieu of the stipulated judgment mentioned in the stated condition. The ultimate conclusion that Dr. and Mrs. Unkel clearly agreed to terminate temporary alimony on August 17, 1994, cannot be clearly wrong.
Likewise, termination does not suggest suspension and is not ambiguous. In the letter of June 10, 1994, Dr. Unkel clearly states that as a condition of his agreeing to a conventional community partition during the pendency of the Unkel v.Unkel appeals, he requires Mrs. Unkel to agree that alimony pendente lite would terminate as of the date of execution of the settlement. The verb "terminate" is defined in dictionaries available to us as bringing an end to or cessation to, forming the ending or conclusion of, or ending formally and definitely, a particular thing or matter. Synonyms for the word terminate include cease, discontinue, stop, conclude, end, and finish.
Mrs. Unkel asserts that the word terminate meant to her a suspension of pendente lite alimony rather than an ending or cessation of payments on the date of the agreement. The words terminate and suspend are not synonymous in the ordinary sense and are distinguished in the law. We are to give "[t]he words of a contract ... their generally prevailing meaning." La. C.C. art.2047. A suspensive condition temporarily postpones the enforcement of an obligation until the occurrence of a particular event, but does not end [or terminate or extinguish] an obligation, as does a resolutory condition. Our emphasis. See distinction made in La. C.C. art. 1767. The generally prevailing meaning of "terminate the [obligation of] alimony pendente lite as of the date of execution of the settlement," the word or clause here claimed to be ambiguous, is to end or to extinguish alimony pendente lite.
Two months after the June 10 letter was mailed to Mrs. Unkel and her counsel, the meaning of the word and clause in the letter was reemphasized to them by Dr. Unkel and his counsel by the handwritten addendum placed on the copy of the June 10 letter by Dr. Unkel's counsel. They signed immediately under the addendum that they agreed to the expressly stated condition that the alimony pendente lite terminated, "as of the date of execution of the settlement 8/17/94."
When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. La. C.C. art.2046. There is no language in the June 10 letter to suggest or imply that the termination of pendente lite alimony was intended to be suspended. Finding the language of the letter agreement clear and unambiguous, the trial court concluded that Mrs. Unkel and her counsel were aware of what they were agreeing to when they signed the addended letter of June 10, 1994. These conclusions are not clearly wrong on this record.

*476 Wascom v. Wascom;

Contra bonos mores?
This court, in Unkel v. Unkel, supra, and some other courts had reasoned that an original award, made before the divorce, of temporary or pendente lite alimony, continued to be owed in circumstances where, after a divorce judgment became final, the correctness of a trial court judgment adjudicating the permanent alimony-fault issue remained to be resolved on appeal. That reasoning has been rejected and impliedly overruled in Wascom v. Wascom, 96-CC-0125 (La.4/8/97), 691 So.2d 678. The Wascom court reasoned that the public policy foundation of temporary alimony pending a divorce is the mutual obligation of support between the spouses arising from the marital relationship, and held that the pendente lite alimony obligation does not continue after a final divorce judgment. See Wascom v. Wascom, supra, p. 2, 691 So.2d at pp. 679-80.
McDonald v. McDonald, 520 So.2d 1114 (La.App. 3d Cir.1987), relied on by Mrs. Unkel, is inapplicable here. That case, as well as the case of Dauzat v. Dauzat, 391 So.2d 60 (La.App. 3d Cir.1980), upon which the McDonald decision relied, involved a claim for alimony pendente lite which had accrued before the divorce in each case. These claims were thus subject to the public policy considerations articulated in Holliday v. Holliday, 358 So.2d 618, 620 (La.1978). Public policy of mutual support between spouses, which overrides any premarital anticipatory waiver of the right to receive alimony during the marriage, is not present in the instant circumstances. See Holliday, supra at p. 620. See also Wascom v. Wascom, supra, pp. 3-4, 691 So.2d at pp. 680-81.
The parties in this case had been divorced for eight months when Mrs. Unkel agreed to terminate post divorce temporary alimony on August 17, 1994. Post-legal separation waivers of alimony have long been enforced in Louisiana. See dictum in Nelson v. Walker, 250 La. 545, 197 So.2d 619 (1967). There, waivers of alimony after legal separation were characterized as relative nullities susceptible of ratification by spouses after removal of spousal inability to contract with each other occurred by the signing of a judgment of divorce.
After amendment of former La. C.C. art. 1790 in 1978, removing the incapacities of husband and wife to contract, post- separation or divorce waivers of both permanent and pendente lite alimony have been validated in several cases: Klein v. Klein, 485 So.2d 970 (La.App. 5th Cir.1986), writ denied; deMontluzin v. deMontluzin, 464 So.2d 948 (La.App. 4th Cir.1985); Cunningham v. Cunningham, 448 So.2d 910 (La.App. 3d Cir. 1984); Beringer v. Beringer, 415 So.2d 429 (La.App. 1st Cir.1982). See also McAlpine v. McAlpine, 94-C-1594, 679 So.2d 85, 92 (La. 1996).
Parties are free to contract for any object that is lawful, possible, and determined or determinable. La. C.C. art.1971. Since the alimony at issue here is a post-divorce obligation, the Unkels were free to conventionally modify or terminate by contract the trial court's 1994 alimony award, even during the pendency of the appeal of that award. We find nothing unlawful, contra bonos mores, in Mrs. Unkel's agreeing to Dr. Unkel's condition that the pendente lite alimony terminates as of the date they executed the conventional community partition 8/17/94.
Sanctions; Frivolous Appeal
Seeking La. C.C.P. art. 863 sanctions and damages for frivolous appeal, Dr. Unkel argues that the claim of Mrs. Unkel for post-divorce alimony is neither well-founded in fact nor warranted by existing law, and that she made the claim solely for the purpose of harassing him and increasing his litigation costs.
The trial court has discretion to sanction under Article 863. See Diesel Driving Academy, Inc. v. Ferrier, 563 So.2d 898 (La. App. 2d Cir.1990). A trial court's factual findings as a basis for sanctions are reviewed under the "manifestly erroneous" or "clearly wrong" standard. See Sanchez v. Liberty Lloyds, 950956 (La.App. 1st Cir. 4/4/96), 672 So.2d 268, 271; Morehouse Parish Hospital Service District v. Pettit, 25396 (La.App.2d Cir. 1/19/94), 630 So.2d 1338, writ denied.
Dr. Unkel, of course, agreed that he had not paid the post-August 17, 1994 temporary *477 alimony as affirmed by this court's March 1, 1995 judgment. Whether Mrs. Unkel's claim for post-divorce alimony was well grounded in fact or law focuses on the effectiveness and enforceability of the agreement or waiver in the addended letter signed August 17, 1994. The trial court found unpersuasive Mrs. Unkel's contentions that would render the addended letter agreement unenforceable, and dismissed her claim.
The fact that neither this court nor the trial court found merit in Mrs. Unkel's arguments does not suffice to demonstrate a violation of Article 863. Sanctions do not automatically or always follow an adverse judgment or ruling. Substantially more than an adverse judgment is required to warrant the imposition of sanctions. Diesel Driving Academy, Inc. v. Ferrier, supra, p. 902.
The trial court found that Dr. Unkel did not demonstrate that Mrs. Unkel's position in this matter was unsupported by either existing law or a good faith argument for the extension, modification or reversal of existing law. The trial court did not conclude her motivation was improper in the context of Article 863.
We cannot find on this record a showing that Mrs. Unkel's motivation for the 1995 action was to harass Dr. Unkel or to needlessly increase his costs. Mrs. Unkel's agreement with Dr. Unkel's condition to terminate "pendente lite alimony" affected only that alimony and not her appeal seeking permanent alimony. Mrs. Unkel's arguments about suspension of the pendente lite obligation are simply unpersuasive and inartful, but this fact does not mandate sanctions. We find no error or abuse of discretion in the trial court's denial of sanctions. Likewise, the appeal by Mrs. Unkel is also not so lacking in merit as to be frivolous.

DECREE
At Mrs. Unkel's cost, the judgment is AFFIRMED.