IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 4, 1999 Session

## RUTH MARIE HOLLAND (BEDDINGFIELD) v. MAYBRON HAYES HOLLAND, JR.

**Appeal from the Chancery Court for Maury County**
**No. 88-601     Jim T. Hamilton, Judge**

**No. M1999-02791-COA-R3-CV - Filed June 1, 2001**

This appeal stems from a divorced couple's decision to modify the terms of an agreed order regarding the payment of their marital debt. Almost six years after the parties were divorced in the Chancery Court for Maury County, the husband agreed to release the wife from her obligation to pay a portion of the marital debt in return for her agreement to use her credit to help him purchase a new truck. After the wife repossessed the husband's new truck, the husband requested the trial court to enforce the original agreed order. The trial court determined that the original agreed order remained valid and awarded the husband $18,944 representing the payments the wife should have made under the agreed order. The wife asserts on this appeal that the parties' agreement to modify the agreed order was valid and that she had performed her obligations under the agreement. We agree and, accordingly, reverse the judgment for the husband and direct the trial court to enter an order releasing the wife from her obligation under the agreed order.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed**

WILLIAM C. KOCH, JR., J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and PATRICIA J. COTTRELL, J., joined.

John S. Colley, III, Columbia, Tennessee, for the appellant, Ruth Marie Holland (Beddingfield).

William S. Fleming, Columbia, Tennessee, for the appellee, Maybron Hayes Holland, Jr.

### OPINION

Maybron Hayes Holland and Ruth Marie Holland (now Beddingfield) were divorced by the Chancery Court for Maury County in 1991. On October 4, 1991, they entered an agreed order modifying a portion of the final divorce decree relating to the payment of the parties' $53,567 debt to Sovran Bank (now the Bank of America). Ms. Beddingfield agreed to assume responsibility for $20,000 of this debt. Because the debt apparently was in Mr. Holland's name, Ms. Beddingfield agreed to pay $256 per month with a check payable jointly to Mr. Holland and the bank. These

payments were to begin in September 1991 and were to continue each month until July 1999 when Ms. Beddingfield was required to make a $10,272.13 balloon payment. Mr. Holland remained responsible for that part of the debt not paid by Ms. Beddingfield.

On August 26, 1997, Mr. Holland and Ms. Beddingfield entered into the following handwritten agreement:

> Since [Ms. Beddingfield] has agreed to finance another vehicle for [Mr. Holland], [Mr. Holland] has agreed to release her from paying him back the money from their divorce settlement.
>
> And as long as [Mr. Holland] makes the payments of $426.00 per month and pays his ins. [Ms. Beddingfield] will give the title of the 96 Chev. truck to [Mr. Holland] at that time. When the truck is paid off.

Pursuant to the agreement, Ms. Beddingfield executed a note to finance the purchase of a Chevrolet pickup truck for Mr. Holland. The parties did not request the trial court to modify its October 4, 1991 order to reflect this agreement.

Mr. Holland continued to send Ms. Beddingfield checks for the car note and insurance premiums until March 1998 when Ms. Beddingfield asked him to authorize the electronic transfer of the payments from his account to hers on the twentieth day of each month. Mr. Holland executed the paperwork necessary for the transfers to begin, but no transfer was made on March 20, 1998, because his account was overdrawn. Ms. Beddingfield attempted to contact Mr. Holland when she did not receive the funds but was only successful in leaving him four or five messages. In early April 1998, after Mr. Holland did not return her calls, Ms. Beddingfield had the truck repossessed.

The repossession of his truck did not go over well with Mr. Holland. On April 17, 1998, he petitioned the trial court to hold Ms. Beddingfield in contempt for failing to make the monthly payments required by the October 4, 1991 agreed order. The trial court determined that both parties had breached their August 1997 agreement and, therefore, that the October 1991 agreed order was still enforceable. Accordingly, the trial court directed Ms. Beddingfield to pay Mr. Holland $18,944.[1] Ms. Beddingfield has appealed from this judgment.

## I.

Ms. Beddingfield's principal argument on this appeal is that the trial court erred by refusing the enforce the parties' August 1997 agreement on the ground that both parties had failed to abide

---

[1] This amount represents the accumulated payments Ms. Beddington would have been required to make under the August 1997 agreement.

by it. She asserts that she complied with her obligations under the agreement and, therefore, that she should be excused from her obligations under the October 1991 agreed order. We agree.

## A.

Agreements regarding the disposition of marital property are essentially contractual. They do not bind the courts or the parties until they are approved and incorporated into the final decree. *Alden v. Presley*, 637 S.W.2d 862, 864 (Tenn. 1982); *Youree v. Youree*, 217 Tenn. 53, 58, 394 S.W.2d 869, 871 (1965). Once approved, these agreements are binding on the parties. *Penland v. Penland*, 521 S.W.2d 222, 224 (Tenn. 1975); *Gaines v. Gaines*, 599 S.W.2d 561, 565 (Tenn. Ct. App. 1980). Therefore, final decrees embodying the parties' agreements regarding the distribution of their marital estate must be respected and followed like any other court order.

Parties ignore court-approved property settlement agreements at their peril. A party who unilaterally ignores such an agreement runs the risk of being held in contempt. When both parties ignore their court-approved agreement, they run the risk that the court will decline to recognize their claims based on their later, unapproved agreement should something go awry. Thus, the prudent course is to obtain court approval when the parties agree to a new arrangement that differs materially from the terms of their original agreement approved in the final decree.[2]

However, both the trial and appellate courts understand through experience that parties in divorce cases frequently engage in self-help with regard to the division of their marital estates. It is not uncommon for divorce decrees to leave details regarding the division of personal property to the parties or for the parties to change their minds once a final decree has been entered. In these circumstances, the parties frequently reach accommodations that suit their particular circumstances. In cases where the rights of third parties are not adversely affected, divorced parties should be encouraged to resolve their differences without returning to the courts. Thus, rather than invalidating post-divorce agreements by adopting a per se rule against them, the better course is to apply normal principles of contract law to the post-divorce agreements in which the parties undertake to alter or waive their rights embodied in the final divorce decree. *Puckett v. Harrison*, No. 02A01-9708–CH-00184, 1998 WL 464896, at *3 (Tenn. Ct. App. Aug. 11, 1998) (No Tenn. R. App. P. 11 application filed); *Unkel v. Unkel*, 699 So. 2d 472, 476 (La. Ct. App. 1997); *Quinn v. Quinn*, 727 N.E.2d 92, 94 (Mass. App. Ct. 2000).

## B.

The requisites for forming a valid contract are well settled. Contracts require an offer, *Mason v. Pearson*, 668 S.W.2d 656, 660 (Tenn. Ct. App. 1983), an effective acceptance of the offer, *Pinney v. Tarpley*, 686 S.W.2d 574, 580 (Tenn. Ct. App. 1984), and consideration. *Campbell v. Matlock*, 749 S.W.2d 748, 752 (Tenn. Ct. App. 1987). A contract must result from a meeting of the minds

---

[2]Obtaining court approval is not only prudent but mandatory with regard to changes that, by statute, require court approval, such as modifications in child support.

in mutual assent to the terms, and be free from fraud or undue influence, not against public policy and sufficiently definite to be enforced. *Higgins v. Oil, Chem. and Atomic Workers Int'l Union, Local 3-677*, 811 S.W.2d 875, 879 (Tenn. 1991); *Peoples Bank of Elk Valley v. ConAgra Poultry Co.*, 832 S.W.2d 550, 553 (Tenn. Ct. App. 1991).

Unless required by law, contracts need not be in writing to be enforceable. *Bill Walker & Assocs., Inc. v. Parrish*, 770 S.W.2d 764, 771 (Tenn. Ct. App. 1989). Oral contracts are enforceable, but persons seeking to enforce them must prove mutual assent to the terms of the agreement and must also demonstrate that the terms of the contract are sufficiently definite to be enforceable. *Castelli v. Lien*, 910 S.W.2d 420, 426 (Tenn. Ct. App. 1995). Mutual assent need not be manifested in writing. It may be manifested, in whole or in part, by spoken words or by other acts or failure to act. *Cole-McIntyre-Norfleet, Co. v. Holloway*, 141 Tenn. 679, 685, 214 S.W. 817, 818 (1919); Restatement (Second) of Contracts § 19(1) (1979).

## C.

Though rudimentary, the parties' August 26, 1997 agreement is a valid contract. Mr. Holland promised to release Ms. Beddingfield from her obligation under the October 1991 agreed order in return for two promises by Ms. Beddingfield. First, Ms. Beddingfield promised to "finance" a new truck for Mr. Holland. Second, Ms. Beddingfield promised to give Mr. Holland title to the truck once the loan for the truck was repaid. The parties have no dispute regarding the terms of their agreement, and these terms are sufficiently definite to be enforced and are supported by adequate consideration.

The parties' dispute relates to issues of performance. They agree that Ms. Beddingfield performed one of her two promises when she bought a new truck for Mr. Holland using her own name to obtain the necessary financing. However, Mr. Holland asserts that Ms. Beddingfield breached her second promise by failing to give him title to the truck and that this breach justifies the trial court's decision to enforce the terms of October 1991 agreed order by ordering Ms. Beddingfield to pay him $18,944. This argument failed to take into account that Ms. Beddingfield's performance of her second promise was subject to a condition precedent – Mr. Holland's fulfillment of his promise to make all the insurance and note payments until Ms. Beddingfield's loan to purchase the truck was paid off.

A contractual duty subject to a condition precedent is not required to be performed until the condition occurs or its nonoccurrence is excused. *Covington v. Robinson*, 723 S.W.2d 643, 645 (Tenn. Ct. App. 1986); *Strickland v. City of Lawrenceburg*, 611 S.W.2d 832, 837 (Tenn. Ct. App. 1980); Restatement (Second) of Contracts § 225(1) (1981). The existence of a condition precedent depends upon the parties' intention, which courts may discern from the contractual language and the circumstances surrounding the contract's execution. *Miller v. Resha*, 820 S.W.2d 357, 360 (Tenn. 1991); *Harlan v. Hardaway*, 796 S.W.2d 953, 957-58 (Tenn. Ct. App. 1990). Courts do not favor conditions precedent and will construe doubtful language to impose a duty rather than create a condition precedent. *Koch v. Construction Tech., Inc.*, 924 S.W.2d 68, 71 (Tenn. 1996); *Harlan v.*

*Hardaway*, 796 S.W.2d at 958; Restatement (Second) of Contracts § 227(3) (1981); 3A Arthur L. Corbin, *Corbin on Contracts* § 635 (1960) ("*Corbin on Contracts*").

No special language is needed to create a condition precedent. The nature of the agreement and its surrounding circumstances may sufficiently manifest the parties' intention to make a contractual obligation conditional. *Harlan v. Hardaway*, 796 S.W.2d at 957-58; Restatement (Second) of Contracts § 226 cmt. a (1981). However, the presence of a condition is usually signaled by a conditional word or phrase such as "if," "provided that," "when," "after," "as soon as," "on condition that," and "subject to." *Harlan v. Hardaway*, 796 S.W.2d at 958; Restatement (Second) of Contracts § 226 cmt. a; 3A *Corbin on Contracts* § 639.

The August 26, 1997 agreement states that "*as long as* Mickey makes the payments . . . Ruth will give the title of the 96 Chev. truck to Mickey *at that time*. *When* the truck is paid off" (emphasis added). This language clearly expresses the parties' intention to make Mr. Holland's performance of his duty to pay the insurance and note a condition precedent to Ms. Beddingfield's duty to transfer the title. Mr. Holland's admitted failure to make the agreed-upon loan payments amounts to nonoccurrence of the condition precedent, and this nonoccurrence discharged Ms. Beddingfield of her obligation to transfer title of the car to Mr. Holland.

Mr. Holland asserts that his failure to repay Ms. Beddingfield resulted from the fact that he was not aware that this authorization for electronic transfer of his payments had failed. He claims that he did not receive the four or five messages that Ms. Beddingfield avers she left on his answering machine, and he insists that Ms. Beddingfield should have called him at work because she knew how to reach him there. This argument is a red herring. In the absence of agreement to the contrary, contract law imposes no duty upon the nonbreaching party to track down the breaching party to inform him or her of the breach.[3]

As the maker of a promissory note secured by the truck, Ms. Beddingfield was responsible for the debt even if Mr. Holland failed to pay her in accordance with their August 26, 1997 agreement.[4] Late payments could have negatively affected her credit. Moreover, if the truck became uninsured because Mr. Holland did not pay the insurance premiums, any damage to the vehicle would expose Ms. Beddingfield to further potential loss. No part of the August 26, 1997 agreement prevented the parties from protecting themselves in the event of a failure of one of the parties to perform as promised. Accordingly, after approximately three weeks of Mr. Holland's inaction, Ms. Beddingfield was well within her rights to have the truck repossessed and was no longer under any duty to transfer title.

---

[3] In any event, Mr. Holland had ample notice of his own breach, even without Ms. Beddingfield's messages. A reasonable person would find out whether the automatic payment had gone through by contacting his or her bank, or by examining the bank statement at month's end.

[4] For example, if the vehicle was repossessed and sold because Mr. Holland was not paying the note, Ms. Beddingfield would be liable for the deficiency (the difference between the sale price, minus expenses, and the amount due on the note).

Mr. Holland received the part of the consideration he bargained for. Because his own breach of the parties' August 26, 1997 agreement provided a justification for Ms. Beddingfield's refusal to transfer the title of the truck to him, Mr. Holland must now fulfil his contractual obligation to release Ms. Beddingfield from her debt under the October 1991 order.

## II.

We reverse the judgment and remand the case to the trial court with directions to enter an order releasing Ms. Beddingfield from her obligations in the October 4, 1991 order to pay a portion of the parties' marital debt and for whatever further proceedings may be required. We tax the costs of this appeal to Maybron Hayes Holland for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE